RODNEY E. RUSSELL, APPELLANT, V. STATE OF NEBRASKA, DEPARTMENT OF MOTOR VEHICLES, AND JACK C. CONRAD, DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES OF THE STATE OF NEBRASKA, APPELLEES.

531 N.W.2d 212

Filed May 5, 1995.   No. S-93-484.

Gregory J. Beal, of Gregory J. Beal & Associates, P.C., for appellant.

Don Stenberg, Attorney General, and Paul N. Potadle for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

WHITE, C.J.

The Department of Motor Vehicles (DMV) suspended Rodney E. Russell's operator's license for failure to comply with Nebraska's Motor Vehicle Safety Responsibility Act (Act). Russell appealed the order of suspension to the district court for Cheyenne County, which affirmed the order. Russell appealed the district court's affirmance to the Nebraska Court of Appeals, and pursuant to our authority to regulate the caseloads of the appellate courts, we removed this case from the Court of Appeals' docket to the Nebraska Supreme Court docket.

Russell is an employee of Hooter Industries and/or Scrapco, a business dealing in scrap metal. In June 1992, while Russell was driving a truck owned by Scrapco, an unsecured boom which was attached to the top of the truck struck the underside of a railroad bridge. Scrapco did not carry insurance on the vehicle.

Russell reported the accident to his employer and filed an accident report with the DMV. Russell stated in his report that he was not the owner of the truck and that there was no visible damage to the bridge. Russell did not offer any proof of liability insurance in his report. Russell had automobile liability insurance at the time of the accident, but his insurance did not cover the operation of commercial vehicles. The DMV also received a report of the accident from police officer Larry Cox, who approximated the damage to the railroad bridge to be $60,000.

The DMV determined that there was a reasonable possibility that judgment would be rendered against Russell and established a security deposit of $25,000 to satisfy any damage claims. On July 27, 1992, the DMV issued a letter to Russell, asking that he provide proof of liability insurance and also informing Russell that if he was not insured he could take alternative steps to meet the requirements imposed upon him by the Act. Russell was also notified by this letter that failure to comply by August 11 would result in suspension of Russell's driving privileges.

Russell did not respond to the July 27 letter. In an August 11 letter, the DMV notified Russell that he failed to comply with the Act and that his license would be suspended on August 31 unless he provided evidence of financial responsibility. The August 11 letter also detailed the alternatives by which Russell could show proof of financial responsibility so that his license would not be suspended. Russell did not respond to the August 11 notice, and on August 31 the DMV issued an order of suspension. Russell appealed the DMV's order to the district court for Cheyenne County, which affirmed the suspension order.

Russell claims that the district court erred in affirming the suspension order, in determining that the statutes authorizing both the DMV's actions and the DMV's administrative procedures are constitutional, and in overruling Russell's motion for new trial.

In actions brought under the Motor Vehicle Safety Responsibility Act, an appellate court's review of a district court's review of a decision of the Department of Motor Vehicles is de novo on the record. *Clayton v. Nebraska Dept. of*

*Motor Vehicles*, 247 Neb. 49, 524 N.W.2d 562 (1994); *Wollenburg v. Conrad*, 246 Neb. 666, 522 N.W.2d 408 (1994); *Jacobsen v. Higgins*, 243 Neb. 485, 500 N.W.2d 558 (1993).

We note for clarification that the appeal procedures described in the Administrative Procedures Act (APA) do not apply to actions brought under the Motor Vehicle Safety Responsibility Act. Neb. Rev. Stat. § 60–503(2) (Reissue 1993). However, in certain cases not to be enumerated here, one can appeal a decision made by the DMV under other acts whose appellate procedures are in fact governed by the APA. In those cases where an appeal is taken under procedures set forth by the APA, and when a petition instituting review proceedings is filed in the district court on or after July 1, 1989, the district court's review of an administrative agency's final decision is de novo on the record of the agency. Neb. Rev. Stat. § 84–917(5)(a) (Reissue 1994); *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 514 N.W.2d 310 (1994). The district court's judgment or final order can then be vacated, modified, or reversed by an appellate court for errors appearing on the record. Neb. Rev. Stat. § 84–918(3) (Reissue 1994). Because Russell brought this case pursuant to the procedures set forth in the Motor Vehicle Safety Responsibility Act, however, our standard of review in this case is de novo on the record as mentioned above.

Neb. Rev. Stat. § 60–507(1) (Reissue 1993) provides that the DMV shall suspend the operator's license of a person involved in an accident in Nebraska which results in bodily injury, death, or property damage in excess of $500 *unless* the operator provides proof of financial responsibility. See *Clayton, supra.* Section 60–507(2) and (3) provides that the DMV shall not suspend the operator's license if the DMV determines that there is no reasonable possibility that judgment could be entered against the operator upon considering "all reports and information filed in connection with the accident." Neb. Rev. Stat. § 60–508 (Reissue 1993) provides in part that § 60–507 does not apply

(1). [t]o such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident;

(2) [t]o such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;

(3) [t]o such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the department, covered by any other form of liability insurance policy or bond.

Sections 60–507 and 60–508 clearly detail what the Act requires of operators and owners of vehicles involved in accidents. Russell does not fall under any of the exemptions set forth in § 60–508, so the DMV is required to suspend his license if he cannot provide proof of financial responsibility as required by § 60–507. As we have consistently held, absent anything to the contrary, statutory language is to be given its plain and ordinary meaning; this court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous. *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994); *In re Application of Jantzen*, 245 Neb. 81, 511 N.W.2d 504 (1994); *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993).

The Legislature in these statutes clearly used the words "operator" and "owner" and provided for how the Act affects each one. Russell argues that since he was not the owner of the truck involved in the accident, the DMV had no basis for determining that there was a reasonable possibility that judgment could be entered against Russell for damages resulting from the accident. However, §§ 60–507 and 60–508 clearly set forth the proof of financial responsibility requirements that the operator or owner must meet in the event of an accident.

Russell did not have insurance on the truck he was driving, his automobile liability insurance coverage did not cover the operation of commercial vehicles, and the owner of the truck failed to insure the vehicle. Russell does not fall within the purview of any of the exemptions set forth in § 60–508 and is thus subject to license suspension, since he could not provide proof of financial responsibility under § 60–507.

The Legislature did not create an exemption for persons in

the same situation as Russell's and that is something this court cannot remedy. The statutes clearly and unambiguously define the duties imposed upon operators and owners of vehicles, and we cannot create exemptions where there are none.

"A licensee appealing from a DMV suspension order has the burden of proving the invalidity of the order." *Clayton v. Nebraska Dept. of Motor Vehicles*, 247 Neb. 49, 54, 524 N.W.2d 562, 566 (1994); *Wroblewski v. Pearson*, 210 Neb. 82, 313 N.W.2d 231 (1981). Russell has not met this burden of proof. The record is void of proof of Russell's financial responsibility for the truck he was driving at the time of the accident, and Russell fails to show that he is exempt from the Act. We therefore hold that the district court did not err in affirming the DMV's order of suspension or in overruling Russell's motion for new trial.

Russell also argues that the statutes authorizing the DMV's actions and its administrative procedures have various constitutional infirmities. We have previously held that the Act complies with the notice and hearing requirements of the federal and state Constitutions and is thus not unconstitutional. *Clayton, supra*; *Wollenburg v. Conrad*, 246 Neb. 666, 522 N.W.2d 408 (1994). Furthermore, we have previously found the Act in general to be constitutional and have held that the purpose of the Act is to "protect the public on the highways against the operation of motor vehicles by financially irresponsible persons" and that "in the interests of the public the state may make and enforce regulations reasonably calculated to promote care on the part of all who use its highways." *Hadden v. Aitken*, 156 Neb. 215, 221, 55 N.W.2d 620, 623 (1952), *overruled on other grounds, Stauffer v. Weedlun*, 188 Neb. 105, 195 N.W.2d 218 (1972).

We continue to adhere to our holdings that the Act itself is constitutional. For these reasons, we find Russell's assignments of error regarding the constitutionality of the Act meritless.

Having found all of Russell's assignments of error meritless, we affirm the district court's affirmance of the order of suspension.

AFFIRMED.

CONNOLLY, J., concurring in the result.

I reluctantly agree with the decision reached by the majority in the case at bar. Under Neb. Rev. Stat. §§ 60–507 and 60–508 (Reissue 1993), the Department of Motor Vehicles (DMV) acted properly in suspending Russell's license upon his failure to provide proof of financial responsibility. Likewise, the majority correctly found the statutes authorizing the DMV's actions and administrative procedures to be constitutional. See, *Clayton v. Nebraska Dept. of Motor Vehicles, ante* p. 49, 524 N.W.2d 562 (1994); *Wollenburg v. Conrad*, 246 Neb. 666, 522 N.W.2d 408 (1994). My research indicates that the same result has been reached in other jurisdictions faced with a similar factual scenario. See, *Farrao v. Bureau*, 46 Ohio App. 2d 120, 346 N.E.2d 337 (1975); *Commonwealth v. Adcock*, 103 Pa. Commw. 298, 520 A.2d 118 (1987).

Notwithstanding the legal correctness of the majority's decision, I am disturbed by the inequitable result. Russell stands accused of violating Nebraska's Motor Vehicle Safety Responsibility Act (Act), but the record indicates that Russell did nothing that could be considered irresponsible. Russell owned a personal automobile and had insurance to cover that automobile. However, Russell was driving a company vehicle at the time of the accident herein. Russell had no ownership interest in the company vehicle, and not surprisingly, Russell's insurance did not cover the company vehicle.

Russell had to drive his employer's vehicle in the scope and course of his employment. His employer, however, neglected to procure insurance for its own vehicle. Thus, when Russell damaged the railroad bridge with the employer's vehicle, he became potentially liable for damages as the "operator" of the vehicle under § 60–507. The DMV instructed Russell to either produce evidence of insurance for the employer's vehicle or provide a $25,000 security deposit to cover any damage claims. Since Russell did neither, he lost his operator's license.

It disturbs me that under § 60–507, any employee who drives a company vehicle in the course of his or her employment, but fails to procure insurance for the vehicle *owned solely by the employer*, may have to furnish a security deposit of several thousand dollars or face the prospect of losing his or her

operator's license, even though the employee has properly insured his or her personal vehicle. That an employee is held responsible for insuring the employer's vehicle is alarming. Equally troublesome is the fact that very few citizens are going to be able to raise $25,000 (or whatever the amount might be) within the 2-week time period established by the Act.

However, as the law stands now, an employee who operates a company vehicle in the scope of his or her employment and who does not want to risk losing his or her operator's license is placed in the position of having to determine if his or her employer is in compliance with the Act. If the employee discovers that the vehicle is not covered by insurance, the employee has three choices: (1) terminate employment, (2) procure insurance for the employer's vehicle, or (3) have available several thousand dollars in the event that he or she is involved in an accident. In my opinion, such a law is repugnant and should be changed by the Legislature.

WRIGHT, J., joins in this concurrence.

LANPHIER, J., dissenting.

As I interpret the provisions of the Motor Vehicle Safety Responsibility Act (Act), Neb. Rev. Stat. § 60-501 et seq. (Reissue 1988 & Cum. Supp. 1992), Russell was not subject to the Act and his operator's license was improperly suspended.

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination of the court below. *In re Application of City of Grand Island, ante* p. 446, 527 N.W.2d 864 (1995); *Grady v. Visiting Nurse Assn.*, 246 Neb. 1013, 524 N.W.2d 559 (1994). Although Russell has not argued or assigned as error that the Act does not apply to him, an appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. *State v. Campbell, ante* p. 517, 527 N.W.2d 868 (1995).

Russell was driving his employer's truck at the time of the accident. According to the record, Russell's employer, Hooter Industries and/or Scrapco, was engaged in the scrap metal business, although Russell was driving a boomtruck with a

grapple on it. Russell is to lose his operator's license because his employer's truck was uninsured.

According to § 60–507, the Department of Motor Vehicles (DMV) shall suspend the driver's license of an operator of a motor vehicle who is in any manner involved in an accident resulting in property damage in apparent excess of $500. Section 60–508 exempts financially responsible drivers from such mandatory suspension. The majority concludes that Russell did not meet any of the exemptions of § 60–508 and therefore affirms the DMV's suspension of his license.

However, the Act does not apply to any vehicle subject to the requirements of Neb. Rev. Stat. § 75–307 (Reissue 1990), which applies to motor carriers. See § 60–561. Section 75–307 requires all motor carriers to file with the Public Service Commission proof of insurance, self–insurance, or other security. A "[m]otor carrier shall mean any person who or which owns, controls, manages, operates, or causes to be operated any motor vehicle used to transport passengers or property over any public highway in this state." Neb. Rev. Stat. § 75–302(8) (Reissue 1990). That definition is very broad; clearly broad enough to encompass Russell's employer. Russell's employer hauls scrap metal and therefore meets the definition of a motor carrier.

Russell was driving a vehicle subject to the provisions of § 75–307, and such vehicle was exempt from the provisions of the Act which Russell is charged with violating. In my judgment, the DMV "pointed the finger" at the wrong party and acted improperly by suspending Russell's license. I would reverse.