HAROLD J. SMITH, JR., APPELLANT, V. PAUL M. KELLERMAN, APPELLEE.

541 N.W.2d 59

Filed November 28, 1995.   No. A–93–1081.

Gary L. Dolan, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellant.

J. Arthur Curtiss and Stephanie Frazier Stacy, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

SIEVERS, Chief Judge, and MUES and INBODY, Judges.

SIEVERS, Chief Judge.

This is an action for contribution stemming from a two–car collision occurring in Beatrice, Nebraska. The jury rejected Harold J. Smith, Jr.'s claim for contribution from Paul M. Kellerman. Smith now appeals to this court.

## FACTUAL BACKGROUND

The collision occurred at night at the intersection of 19th and Dorsey Streets on December 8, 1989. Smith was northbound on 19th Street in his 1984 Grand Prix. Kellerman was eastbound on Dorsey Street in his 1975 Dodge Dart. There was a stop sign for the eastbound Kellerman vehicle at that intersection. Kellerman stopped at the stop sign and looked to his right, but his view was obscured by a bush. He pulled forward and looked again to the right and saw the headlights of the Smith vehicle approximately $1\frac{1}{2}$ to 2 blocks away. Kellerman looked to the left and then accelerated in a "normal" fashion across the intersection while looking straight ahead and without looking back to the right for the Smith vehicle. For his part, Smith saw the Kellerman vehicle at the intersection and saw it pull across into

his path. Smith applied his brakes, locking them up and leaving 142 feet of preimpact skid marks, according to the testimony of Dr. Ted Sokol, an accident reconstructionist. Sokol also indicated that there were 70 feet of postimpact skid marks from the Smith vehicle. Sokol put the speed of the Smith vehicle between 66 to 77 m.p.h. immediately before Smith applied his brakes. Sokol put the speed of the Smith vehicle between 41 and 53 m.p.h. at impact and the speed of the Kellerman vehicle at 13 m.p.h. at impact. Sokol testified that the normal time for a driver to perceive danger is three–quarters of a second and that a like amount of time is typically needed to react to the danger. Consequently, Sokol's testimony placed the Smith vehicle approximately 310 feet from the intersection when Smith "began to perceive the Kellerman vehicle as a danger." Sokol further testified that when Kellerman pulled out from the stop sign it would not have been possible for Smith to stop before the collision, given the speed and distance involved. Although 19th Street is on the very edge of Beatrice and has houses on one side and farm fields on the other, the speed limit is 35 m.p.h. Both vehicles had passengers, and as a result of this accident, Smith's insurer, Amco Insurance Company, paid $163,800 in settlement of the personal injury claims of the various passengers in the two vehicles.

## PROCEDURAL BACKGROUND

After receiving an assignment of Amco's interest, Smith filed suit against Kellerman for contribution, seeking 50 percent of the amount paid in settlement of the claims, or $81,900. Smith alleged that Kellerman was negligent in failing to yield the right–of–way, in failing to maintain reasonable control, and in failing to maintain a proper lookout. Kellerman admitted the occurrence of the accident and admitted Amco's assignment to Smith of its claim for contribution, but denied that he was negligent. At trial, Smith did not introduce evidence to dispute that he was speeding and admitted that he had consumed at least two beers prior to the accident. Richard Clinard, a litigation supervisor for Amco, testified about the settlements made by Amco. Clinard testified that based upon his experience and training, the settlements paid to the passengers were reasonable,

and that they were made because of Amco's conclusion that its insured Smith was negligent. Kellerman introduced no evidence to dispute the reasonableness of the settlements made by Amco with the injured passengers in the two vehicles. Kellerman made motions for directed verdicts, and Smith moved for a finding that Kellerman was negligent as a matter of law. The motions were overruled, and the matter was submitted to the jury.

## STANDARD OF REVIEW

■ A directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993).

■ Jury instructions are subject to the harmless error rule, and an erroneous jury instruction requires reversal only if the error adversely affects the substantial rights of the complaining party. *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).

With respect to questions of law, the appellate court has an obligation to reach independent conclusions, irrespective of determinations thereof made by any inferior court. *Rains v. Becton, Dickinson & Co.*, 246 Neb. 746, 523 N.W.2d 506 (1994).

## ASSIGNMENTS OF ERROR

Smith asserts two assignments of error: (1) The trial court erred in failing to grant his motion for a directed verdict made at the close of all of the evidence, and (2) the trial court erred in refusing to give his proposed instruction that "a driver does not lose his right-of-way by driving at an unlawful speed."

## ANALYSIS

*Yielding Right-of-Way at an Intersection.*

■ We begin with Smith's claim that the trial court should have directed a verdict in his favor. Smith moved for both a finding that Kellerman was negligent as a matter of law and a verdict for half of the amounts paid by Amco. In support of this assignment, Smith cites *Kasper v. Carlson*, 232 Neb. 170, 440 N.W.2d 195 (1989), asserting that the facts there are nearly

identical to the instant case. Smith relies heavily upon the following quote from *Kasper*:

> In *Chlopek*, we also reiterated the rules applicable to cases involving violation of the right-of-way of the driver on the favored highway. A driver of a motor vehicle about to enter a highway protected by stop signs is required to come to a complete stop as near the right-of-way line as possible before driving onto the highway. After stopping, the driver must yield the right-of-way to any vehicle approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves into or across the intersection. The driver has a duty to look both to the right and to the left and to maintain a proper lookout for the safety of himself and others. A person traveling on the favored street protected by stop signs of which he has knowledge may properly assume that motorists about to enter from a nonfavored street will observe the foregoing rules. *Chlopek, supra*, citing *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978).

232 Neb. at 174, 440 N.W.2d at 198.

In *Kasper*, the southbound vehicle driven by plaintiff's decedent approached a T-intersection which was protected by a stop sign and upon which the eastbound defendants' truck was proceeding. One version of the evidence was that the truckdriver stopped at the stop sign, but never looked again to his left as he turned across the southbound lane of River Road while looking to his right. The southbound vehicle on River Road "submarined" under the left side of the truck, and its driver, plaintiff's decedent, was fatally injured. The Supreme Court found that the trial court did not err in failing to direct a verdict in favor of plaintiff, but did err in failing to instruct the jury that defendant truckdriver was negligent as a matter of law. The fundamental precept of *Kasper* is the statement by the court that it is well established that a motorist is required to yield the right-of-way to a vehicle traveling on a highway protected by stop signs if the vehicle is "close enough to the intersection to pose an *immediate hazard*." (Emphasis supplied.) 232 Neb. at 173, 440 N.W.2d at 197, citing *Chlopek v. Schmall*, 224 Neb.

78, 396 N.W.2d 103 (1986).

After detailing the above applicable law, the Supreme Court in *Kasper* returned to the facts, reciting that the truckdriver started out from the stop sign (located 55 feet west of the southbound highway) without ever looking left to the direction from which plaintiff's decedent was coming, until the truck was halfway through the intersection. Additionally, the court cited the testimony from the investigating state trooper that the truckdriver told him immediately after the accident that his foot had slipped off the brake and he " 'went through the intersection.' " *Id.* at 175, 440 N.W.2d at 198. After reciting these facts, the court then stated, "Because the evidence as discussed above was established at trial, the plaintiff is entitled to an instruction that the defendant Carlson [the truckdriver] was negligent as a matter of law." *Id.*

We cannot agree with Smith that the facts in *Kasper* are almost identical to the case before us and compel a finding that the trial judge here erred by not directing a verdict. In *Kasper*, there was evidence that the truckdriver did not look or see the vehicle on the protected road until the truck was halfway through the intersection. Additionally, by his own admission to the trooper, the truckdriver may not have stopped at all. Thus, whether the truckdriver stopped and failed to look or whether he simply went through the stop sign, those circumstances from *Kasper* are different from those in the instant case and support the finding that the truckdriver was negligent as a matter of law.

Whether one fails to look or looks and sees an approaching vehicle, but misjudges its speed and distance, the question of negligence is usually for the jury, except in those cases where the evidence that the approaching vehicle was within the limit of danger is so conclusive that reasonable minds could not differ thereupon. See *Getzschman v. Yard Co.*, 229 Neb. 231, 426 N.W.2d 499 (1988). However, a driver who fails to see another motorist who is favored over him is guilty of negligence as a matter of law when the motorist's vehicle is indisputably located in a favored position. Before a verdict can be properly directed in such a case, the position of the oncoming vehicle must be definitively located in the favored position, that is, within the radius which denotes the limit of

danger. *Id.* A vehicle is located in a favored position when it is within the radius which denotes the limit of danger—a definition which focuses on the vehicle's geographic proximity to the collision point and the vehicle's favored status under the applicable rules of the road. See *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995). In the instant case, the question of whether Smith's vehicle was so indisputedly located in a favored position that Kellerman was negligent as a matter of law turns on Smith's geographic proximity to the intersection because, as the vehicle on the protected roadway, he is otherwise favored under the rules of the road.

In addressing the matter of geographic proximity, we view the evidence most favorable to Kellerman, as we must under the standard for determining whether a verdict should be granted. We recall that there is evidence in the record that Smith was proceeding at 77 m.p.h. when he applied the brakes, meaning he was covering 115 feet per second immediately prior thereto. He left 142 feet of preimpact skid marks. There was also evidence of perception time and reaction time totaling 1½ seconds, meaning that at 77 m.p.h. Smith would have been 173 feet south of where his skid marks began at the instant he was first motivated by what he observed to apply his brakes. This puts Smith a total of 315 feet south of the intersection when he perceived that Kellerman was entering the intersection. This evidence allows for the conclusion that when Kellerman looked to his right and first saw the headlights of the approaching Smith vehicle, the car was at least 300 feet away. Such calculations are based on what Smith did, as Smith did not start to brake until he saw Kellerman entering the intersection and recognized this as a danger.

However, before starting across the intersection, Kellerman had looked to his left after seeing the headlights of the oncoming Smith vehicle. Of necessity, additional time passed between the time when Kellerman first saw the headlights of Smith's vehicle and when Kellerman first started across the intersection—the act and danger which triggered Smith's response of braking. As a result, Smith was even farther south of the intersection than the 315 feet calculated above when Kellerman first observed him. That is to say, we must include,

in addition to Smith's perception time, reaction time, and skid marks, the time which elapsed while Kellerman's gaze shifted from the oncoming headlights on his right to his left, because he did not start out until he had shifted his gaze from right to left and then to straight forward. If this elapsed time was just 1 second, it would have the consequence of placing Smith another 115 feet (77 m.p.h. equals 115 feet per second) farther south of the intersection. Therefore, Smith could have been as far as 430 feet south of the intersection when Kellerman first saw Smith.

The foregoing deductive inferences come from viewing the evidence most favorably to Kellerman, as must be done when determining whether he was negligent as a matter of law. We must give Kellerman the benefit of every reasonable inference that may be deduced from the evidence. See *Moats v. Lienemann*, 188 Neb. 452, 197 N.W.2d 377 (1972). We judge the matter using the version of the evidence which most favors Kellerman, and thus we use Sokol's testimony that Smith was traveling 77 m.p.h. immediately prior to braking. See *Floyd v. Worobec, supra* (using for analytical purposes version of events provided by party resisting motion to find such party negligent as matter of law).

Under this standard, we cannot say as a matter of law that Smith, who could be as much as 430 feet south of the intersection when first observed by Kellerman, was indisputedly located in a favored position. If Smith is not indisputedly in the favored position, and we think that reasonable minds could differ on this point, the question of Kellerman's negligence is for the jury. Accordingly, Kellerman was not negligent as a matter of law as Smith contends, and the trial court properly denied the motion for a directed verdict. Smith's first assignment of error is without merit.

*Plain Error in Jury Instructions.*

Our review of this case convinces us that this jury was not correctly instructed with reference to the fundamental precepts of an action for contribution. Therefore, we turn to the issues presented by the jury instructions. The prerequisites to a claim for contribution are that the party seeking contribution and the party from whom it is sought share a common liability

and that the party seeking contribution has discharged more than his fair share of the common liability. 18 C.J.S. *Contribution* § 5 (1990). Contribution is defined as a sharing of the cost of an injury as opposed to a complete shifting of the cost from one to another, which is indemnification. *Warner v. Reagan Buick*, 240 Neb. 668, 483 N.W.2d 764 (1992). In other words, a common liability to the same person must exist in order for there to be contribution. *Rawson v. City of Omaha*, 212 Neb. 159, 322 N.W.2d 381 (1982).

The jury was instructed that Amco had assigned its claim to Smith, who sued Kellerman for "contribution." In instruction No. 2, the court told the jury that the burden of proof was upon Smith to prove that Kellerman was negligent and that such negligence was *a proximate cause* of the accident and also to prove the "fair and reasonable amount of damages paid by AMCO Insurance Company on behalf of plaintiff in settlement of passengers's [sic] damages resulting from the accident." The court then instructed as follows:

> If plaintiff Smith has failed to establish by the greater weight of the evidence any one or more of the foregoing numbered propositions, your verdict will be for defendant Kellerman.
>
> On the other hand, if plaintiff Smith has established by a greater weight of the evidence all of the above numbered propositions [that Kellerman was negligent which was a proximate cause], then you must consider the defenses of defendant Kellerman.

The court further instructed the jury that Kellerman's defenses were that the accident was "solely and proximately caused by the negligence of plaintiff Smith" in one or more of the following particulars: (1) speeding, (2) not having his vehicle under reasonable control, (3) failing to yield the right-of-way, and (4) failing to maintain a proper lookout. The jury was instructed that the burden of proof was on Kellerman to show that Smith was negligent and that such negligence was the *sole* proximate cause of the accident, and if the jury so found, its verdict would be for Kellerman.

In summary, the jury was told that if Smith proved that Kellerman was *a* cause of the accident, then it must determine

whether Smith was the *sole* proximate cause. This instruction presented the jury with an obviously illogical and impossible premise in an action for contribution. Admittedly, Kellerman could be *a* cause, or Smith could be the *sole* cause; but the jury cannot find that Smith is the *sole* cause of the accident when the jury has already found Kellerman to be *a* cause. Thus, to this extent, instruction No. 2 was incorrect.

The parties also agreed in the pretrial order that the matter of Kellerman's negligence, if it was a jury issue, "would be submitted under the instruction on concurrent negligence as contained in the Nebraska Jury Instructions, 2nd." This agreement was the apparent basis for giving instruction No. 6 which provided:

> Where the independent negligent acts or failures to act of more than one person combine to proximately cause the same injury and damage, each such act or failure to act is a proximate cause, *and each such person may be held responsible for the entire injury or damage.* This is true though some may have been more negligent than others.

(Emphasis supplied.)

This instruction corresponds with NJI2d Civ. 3.42 entitled "Concurring Cause." Even though the parties agreed generally to this instruction, the emphasized portion thereof should not have been given. The instruction would be appropriate for an action by a passenger from one of the vehicles against either Smith or Kellerman. In such an action, NJI2d Civ. 3.42 informs the jury that even though two people each committed negligent acts which in combination proximately caused the same injury, one of those two negligent parties can be held liable for all of the injury to the passenger. This is an appropriate instruction when only one joint tort–feasor is sued so that a jury does not lay the responsibility at the doorstep of the absent tort–feasor. However, instructing that one person may be responsible for the entire injury when the negligence of two people proximately combines to cause the injury, is the antithesis of contribution— an action to have the two negligent parties share the cost of the injury they have jointly and proximately caused. Instruction No. 6 was flawed.

It is the trial court's duty to instruct on the issues

presented by the pleadings and supported by the evidence, and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no error. *Gilbert v. Archbishop Bergan Mercy Hospital*, 228 Neb. 148, 421 N.W.2d 760 (1988). It is the duty of the trial court to instruct on the proper law of the case, and failure to do so constitutes prejudicial error. *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993). An instruction that misstates the issues or defenses and has a tendency to mislead the jury is erroneous. *Wilson v. Misko, supra.*

This action was tried as a contribution case, and the jury was instructed that Kellerman must contribute to the settlements made by Smith if Kellerman's negligence, if any, was "a proximate cause." The emphasized portion quoted above from instruction No. 6 misled the jury by telling it that each negligent person may be held responsible for the entire damage. This is inherently inconsistent with the nature of the lawsuit on trial and with other instructions which would have imposed responsibility upon Kellerman, if he were guilty of negligence which was *a* proximate cause of the accident. The emphasized portion of instruction No. 6 informed the jury that one tort-feasor can legally carry the burden for the entire injury, i.e., the $163,800 in settlements from this accident, when the very nature of the action on trial—contribution—is a sharing of financial responsibility among those whose negligence combined to cause the injury.

Although Smith does not assign the giving of instructions Nos. 2 and 6 as error and in fact submitted a proposed instruction very similar to instruction No. 6 given to the jury, we address the instructions under the plain error doctrine. An appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. *Russell v. State*, 247 Neb. 885, 531 N.W.2d 212 (1995). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Pantano v. McGowan*, 247 Neb. 894, 530 N.W.2d 912 (1995).

The combination of the error in instructions Nos. 2 and 6 rises to the level of plain error because the jury was misinformed

at the most fundamental level about this case and misled to the prejudice of Smith. All that is needed to establish Kellerman's liability for contribution is that his negligence be *a* proximate cause. That Smith was negligent is not a defense for Kellerman unless Smith's negligence was the *sole* proximate cause. But, determining whether Smith was the *sole* proximate cause is subsumed within the jury's determination of whether Kellerman's negligence was *a* proximate cause. If Kellerman was *a* proximate cause, Smith was entitled to recover—the instructions did not tell the jury this.

Moreover, the phrase from instruction No. 6 "and each such person may be held responsible for the entire injury or damage" incorrectly (in a contribution case) tells the jury that one negligent party can bear full responsibility even though the negligence of two people combines to produce the injury—a proposition wholly inconsistent with the doctrine of contribution.

These erroneous instructions go to the heart of the lawsuit, and a verdict premised thereupon damages the fairness of the judicial system. We reiterate the uncontested nature of the proof of damages, and therefore we conclude that failure of proof of damages is unlikely to account for the verdict in Kellerman's favor. We find that the instructional errors were prejudicial, and we reverse under the plain error doctrine, and remand for a new trial.

*Speeding as Forfeiture of Right-of-Way.*

■ Finally, Smith contends that the trial court erred when it failed to instruct the jury that he did not forfeit his right-of-way by driving at an unlawful speed. We address this assignment because the issue is likely to be involved in a retrial of this case. See *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990). It is a well-established tenet of Nebraska automobile law that "[o]ne does not forfeit his right-of-way by driving at an unlawful speed." *Burrows v. Jacobsen*, 209 Neb. 778, 781, 311 N.W.2d 880, 883 (1981). See, also, *Epperson v. Utley*, 191 Neb. 413, 215 N.W.2d 864 (1974). *Epperson* explains that there were separate statutory sections regulating right-of-way at intersections from 1931 to 1971 and that the 1931 provision

provided that when two vehicles approach an intersection at approximately the same time, the vehicle on the left shall yield the right-of-way to the vehicle on the right and that "[t]he driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder . . . ." 191 Neb. at 419, 215 N.W.2d at 868, quoting 1931 Neb. Laws, ch. 110, § 17, p. 311. According to the *Epperson* court, this provision remained in effect until 1969, when this section was repealed. However, the statutory forfeiture section related only to directional right-of-way cases.

The court in *Epperson* also rejected the suggestion that forfeiture of right-of-way by speed can be said to still exist by virtue of other aspects of the right-of-way concept:

> The plaintiff argues that the "rule of reason" announced by the cases under the prior forfeiture provision should be retained and even extended to nondirectional right-of-way forfeitures. But, as we have shown, the forfeiture rule is completely derivative from statute and not from decisional law. Even under the statute it was limited to directional right-of-way cases. It is beyond doubt that the Legislature in 1969 expressly excluded the forfeiture provision from the applicable statutes. The intent was clear. The trial court properly refused to instruct on forfeiture of right-of-way by unlawful speed. The inference to the contrary, found in dicta, in Hacker v. Perez, 187 Neb. 485, 192 N. W. 2d 166 (1971), that forfeiture of right-of-way by unlawful speed is "inherent" in other regulations covering right-of-way is expressly disapproved.

191 Neb. at 420, 215 N.W.2d at 869.

The foregoing decisional law is also cited in the comment to NJI2d Civ. 7.14 on "Speed," but 7.14 does not contain what Smith argues for here—an instruction to the jury that unlawful speed does not forfeit right-of-way. We are unable to find a Nebraska case which holds that such an instruction should be given.

■ We turn to the instructions given in the present trial which include the following portions of NJI2d Civ. 7.04, given to the jury in instruction No. 9: "1. Drivers required to stop must yield the right-of-way to cross traffic that is *so close to*

*the intersection and traveling at such a speed that it is not safe for them to proceed into the intersection*[.]" (Emphasis supplied.)

█ Kellerman argues that an instruction that right-of-way is not forfeited by unlawful speeding is a negative instruction which should not be given. The Nebraska Supreme Court has said that the Nebraska Jury Instructions should be used when applicable and practical, but when it is necessary to draft a special definitional instruction, it "should, whenever possible, be placed in an affirmative rather than a negative posture." *Jones v. Foutch*, 203 Neb. 246, 261, 278 N.W.2d 572, 580 (1979). For example, in *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 284 N.W.2d 846 (1979), the court said that there was no duty to instruct the jury as to what would not be an accord and satisfaction, but, rather, it was the duty of the court to instruct the jury as to the elements of an accord and satisfaction. The court held that when the trial court has instructed the jury affirmatively upon the issues presented by the pleadings and the evidence, it is unnecessary to instruct in a negative form. From this doctrine, it can be analogized as a general proposition that the trial court need not and should not instruct on conduct which does not forfeit right-of-way.

Nonetheless, as the law is that a speeding vehicle does not forfeit its right-of-way, the question becomes whether NJI2d Civ. 7.04 given by the trial judge as instruction No. 9 contains this concept. The jury was told that a driver such as Kellerman must yield if the vehicle in cross traffic is so close *and* traveling at such a speed that it was not safe for him to proceed into the intersection. The instruction does not condition Kellerman's duty to yield on the lawfulness of Smith's speed. The instruction simply and plainly states that the determinative facts are cross traffic speed and distance—and whether those two conditions make it unsafe for the driver at the stop sign to enter the intersection. Interestingly, Smith asserts that the no forfeiture rule "has been embodied in instruction 7.04 . . . ." Brief for appellant at 9. We agree. The nonforfeiture of right-of-way doctrine is contained within NJI2d Civ. 7.04 which was given to the jury. A separate negative instruction telling the jury that certain conduct does not constitute a forfeiture is not required.

Accordingly, there was no error in failing to give the requested instruction that unlawful speed does not forfeit right-of-way. The second assignment of error is also without merit.

## CONCLUSION

Having found plain error in the instructions to the jury, we reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.