IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PEREA V. GOMEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN PEREA, APPELLEE,

V.

RICARDO GOMEZ, JR., APPELLANT.

Filed February 21, 2017.    No. A-15-1024.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Jordan W. Adam, of Fraser Stryker, P.C., L.L.O., for appellant.

Terrence J. Salerno and Danny C. Leavitt for appellee.

RIEDMANN and BISHOP, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

## INTRODUCTION

Ricardo Gomez, Jr., appeals from a jury verdict in John Perea's favor in Perea's suit against Gomez for negligence relating to a motor vehicle collision. On appeal, Gomez argues that the district court erred in instructing the jury regarding the relevance of a driver's speed to the question of comparative negligence and in overruling Gomez' motion for new trial on the same basis. Upon our review, we find no error in the jury instructions, and we affirm.

## BACKGROUND

On May 18, 2013, Perea was riding his motorcycle southbound on 42nd street in Omaha, Nebraska, near the area of J Street. Where 42nd Street intersects J Street, the cross-traffic at J Street has a stop sign. The speed limit on 42nd Street in the area of J Street is 35 miles per hour. Shortly before the accident, Gomez was stopped at the stop sign at the intersection of 42nd and J

- 1 -

Streets. As Perea approached the intersection, Gomez turned right onto 42nd street southbound in front of Perea's motorcycle. Perea collided with the rear passenger's side of Gomez' vehicle, lost control of the motorcycle, and came to rest in a nearby yard. Perea was transported to the hospital and treated for scrapes and bruises, as well as neck and back injuries.

Perea brought suit against Gomez for negligence, claiming that Gomez had failed to yield the right-of-way when turning onto 42nd street, causing Perea to swerve in an attempt to avoid colliding with Gomez' car. Gomez answered, asserting that Perea had been comparatively negligent, for, in relevant part, speeding prior to the collision.

The matter proceeded to a jury trial. Perea and Gomez both testified and provided their respective versions of the accident. According to Perea, he was in the curb lane as he approached the intersection at 42nd and J. Perea testified that as Gomez began to turn onto 42nd Street in front of him, he moved over into the median lane, expecting to pass Gomez on the left. According to Perea, Gomez made a wide turn into the median lane, and Perea attempted to maneuver back into the curb lane to avoid Gomez' car. Perea testified that he was unable to avoid hitting the back passenger side of Gomez' car. Perea estimated that he was going between 35 and 40 miles per hour prior to the accident, but he admitted that medical documents from after the accident included Perea's statement that he was going 45 miles per hour at the time of the collision.

Perea testified that he missed approximately three months of work due to the injuries he suffered in the accident. Perea underwent medical treatment following the accident, including receiving spinal injections, taking pain pills and steroids, attending physical therapy, and seeing a chiropractor. Perea testified that his road rash and abrasions have healed, but that he continues to experience a swollen left ankle, a stiff neck, a painful back, and ringing in his left ear, all of which he attributes to the accident.

Perea also presented the testimony of two of his relatives who were riding their own motorcycles behind him the day of the accident. Both relatives corroborated Perea's testimony that Gomez turned in front of Perea into the median lane and that Perea hit the back of Gomez' vehicle as he attempted to move over into the curb lane to avoid him. The first relative estimated that the trio was traveling between 35 and 40 miles per hour at the time of the collision. The second relative estimated their speed at about 40 miles per hour.

In contrast, Gomez testified that he came to a complete stop at the stop sign on 42nd and J, looked both ways, and did not see any vehicles. Gomez testified that he turned into the curb lane and then, after approximately 100 to 120 feet, began to signal to move into the median lane. Before Gomez could maneuver into the median lane, he felt the impact of Perea hitting his car. Gomez testified that he never saw Perea's motorcycle before the accident.

Both parties also presented the testimony of accident reconstructionists who supported their respective theories of the case. Perea's expert opined that Gomez' story about turning into the curb lane was not viable based on where the impact occurred and the width of the lane. Perea's expert also testified that Perea's speed was not a factor in the accident because even if Perea had been going exactly the 35 miles per hour speed limit, he would not have had sufficient time to react to Gomez' vehicle pulling out in front of him.

In contrast, Gomez' accident reconstructionist testified that Perea's speed was the cause of the accident. The expert opined that Perea would have been able to avoid the accident by braking

if he had been going only 35 miles per hour when Gomez turned in front of him. Gomez' expert calculated that Perea was traveling between 48 and 57 miles per hour at the time of the crash, based on rotational slide marks and eye witness testimony.

Prior to submitting the case to the jury, the district court held a jury instruction conference. Gomez objected to what was eventually given as jury instruction No. 13. Gomez objected on the basis that the court had unnecessarily inserted additional language instructing the jury to ignore Perea's speed prior to the accident. The court overruled Gomez' objection to jury instruction No. 13.

The jury returned a verdict in Perea's favor and awarded him $360,000 in damages. The court entered judgment on the jury's verdict. Following the entry of judgment, Gomez filed a motion for new trial, claiming the court erred in providing jury instruction No. 13 and in failing to sustain Gomez' objection to the same. The district court overruled Gomez' motion for new trial.

Gomez appeals. Additional facts will be discussed, as necessary, in the analysis section below.

ASSIGNMENTS OF ERROR

Gomez argues that the district court erred in giving instruction No. 13 to the jury and in failing to grant Gomez a new trial based on giving the allegedly erroneous instruction.

STANDARD OF REVIEW

Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *Golnick v. Callender*, 290 Neb. 395, 860 N.W.2d 180 (2015).

ANALYSIS

Gomez argues that jury instruction No. 13 was contradictory, confusing, and misleading. In particular, Gomez argues that the instruction precluded the jury from considering Perea's speed, effectively negating Gomez' defense that Perea was comparatively negligent. We determine that instruction No. 13 was not contradictory, confusing, or misleading, and that the jury instructions, taken as a whole, correctly state the law. Accordingly, we find no merit to Gomez' assignment of error regarding jury instruction No. 13.

It is a general rule that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway, at any time, at a speed or in such manner that it cannot be stopped or its course be changed in time to avoid a collision with an object or obstruction discernible within his or her range of vision in the direction he or she is traveling. *Harrison v. Seagroves*, 250 Neb. 495, 549 N.W.2d 644 (1996). The speed of a motor vehicle is excessive if it is found to be unreasonable or imprudent under the existing circumstances, even though it may not exceed the applicable statutory limits. *Id.*

Although a driver may be negligent for driving at an excessive speed, it is a well-established tenet of Nebraska automobile law that one does not forfeit his right-of-way by driving at an unlawful speed. *Smith v. Kellerman*, 4 Neb. App. 178, 541 N.W.2d 59 (1995).

A party's right to a fair trial may be substantially impaired by jury instructions that contain inconsistencies or confuse or mislead the jury. *Domjan v. Faith Reg'l Health Servs.*, 273 Neb. 877, 735 N.W.2d 355 (2007).

Jury instruction No. 13 reads as follows:

Drivers are negligent if they do something a reasonably careful driver in the same situation would not have done, or fail to do something a reasonably careful driver in the same situation would have done.

For example, drivers are negligent if they fail to see or hear those things that would have been seen or heard by a reasonably careful driver in the same situation. They are also negligent if they fail to keep their vehicles under such control as a reasonably careful driver would have in the same situation.

Reasonably careful drivers take into consideration such facts as their own speed, the condition of their vehicle, the condition of the road, the presence of other vehicles, and any other factors that affect driving conditions.

Drivers must use reasonable care even when they have the right-of-way. A driver required to stop before entering an intersection controlled by a stop sign must yield the right-of-way to a vehicle in cross traffic if the vehicle is close enough and traveling at such a speed, *regardless the rate*, that it is not safe for him to proceed into the intersection.

(Emphasis supplied.) Gomez takes issue with the phrase "regardless the rate" in the final sentence of the instruction.

Jury instruction No. 13 as given by the district court is a hybrid of Nebraska Civil Jury Instructions 7.03A and 7.04. Nebraska Jury Instruction 7.03A is entitled "Negligence on the Part of a Driver--Lookout, Control, Conditions Affecting Visibility, and Other Considerations" and it provides as follows:

Drivers are negligent if they do something a reasonably careful driver in the same situation would not have done, or fail to do something a reasonably careful driver in the same situation would have done.

For example, drivers are negligent if they fail to see or hear those things that would have been seen or heard by a reasonably careful driver in the same situation. They are also negligent if they fail to keep their vehicles under such control as a reasonably careful driver would have, in the same situation.

Reasonably careful drivers take into consideration such facts as their own speed, the condition of their vehicle, the condition of the road, the presence of (snow, frost, fog, mist, smoke, et cetera), the presence of other vehicles, pedestrians, or objects, and any other factors that affect driving conditions.

[Drivers must use reasonable care even when they have the right-of-way.]

NJI2d Civ. 7.03A.

- 4 -

Nebraska Jury Instruction 7.04 is entitled "Stop Signs--Intersections" and provides:
Nebraska statutes provide that drivers must stop for stop signs.

    1. If there is a clearly marked stop line, they must stop immediately before crossing that line.

    2. If there is no clearly marked stop line, they must stop immediately before entering the nearest crosswalk.

    3. If there is neither a clearly marked stop line nor a *[marked or unmarked]* crosswalk, they must stop at the point that is nearest the intersecting *(street, highway, roadway, et cetera)* and provides a view of traffic approaching on the intersecting *(street, highway, roadway, et cetera)*.

    A driver at a stop sign must yield the right-of-way to cross traffic that has entered the intersection.

    At an intersection where drivers on one *(street, highway, roadway, et cetera)* are required to stop and drivers on the other are not required to stop, the following rules apply:

    1. Drivers required to stop must yield the right-of-way to cross traffic that is so close to the intersection and traveling at such a speed that it is not safe for them to proceed into the intersection;

    2. Drivers who are not required to stop have the right to assume that drivers who are required to stop will do so and will not start up again until it is safe. On the other hand, drivers who do not have stop signs are not relieved of their duty to exercise reasonable care.

NJI2d Civ. 7.04.

The court also gave instruction No. 11, which reads, "No person shall drive at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." Additionally, jury instruction No. 12 states, in relevant part:

    At an intersection where drivers on one street are required to stop and drivers on the other are not required to stop, the following rules apply:

    1. Drivers required to stop must yield the right-of-way to cross traffic that is so close to the intersection and traveling at such a speed that it is not safe for them to proceed into the intersection.

    2. Drivers who are not required to stop have the right to assume that drivers who are required to stop will do so and will not start up again until it is safe. On the other hand, drivers who do not have stop signs are not relieved of their duty to exercise reasonable care.

Gomez argues that the insertion of the phrase "regardless the rate" in the last sentence of jury instruction No. 13 misled the jury into believing that Perea's speed was not relevant. Gomez points to the case of *Smith v. Kellerman*, 4 Neb. App. 178, 541 N.W.2d 59 (1995), as standing for the proposition that it is error to give an instruction that a driver does not forfeit the right-of-way by driving at an unlawful speed.

In *Smith v. Kellerman*, a northbound motorist with the right-of-way brought suit against an eastbound driver who had proceeded into the intersection after stopping at a stop sign, causing a collision. *Id.* The northbound driver requested that the court instruct the jury that unlawful speed does not forfeit a driver's right-of-way. *Id.* We held that the trial court did not err in refusing to give a separate instruction that a speeding vehicle does not forfeit its right-of-way because the same concept was contained within Nebraska Jury Instruction 7.04 which was given to the jury. *Id.*

Although *Smith* stands for the proposition that the failure to give a separate forfeiture of right-of-way instruction is not reversible error, it does not answer the question whether the instruction actually given in the present case was prejudicial error. Perea argues that a different opinion from this court, *Suiter v. Epperson*, 6 Neb. App. 83, 571 N.W.2d 92 (1997), governs the issue in this case.

In *Suiter*, we determined that the giving of a nonforfeiture of right-of-way instruction was not reversible error in a negligence case. However, in *Suiter*, the trial court had found as a matter of law that the plaintiff was negligent for failing to yield the right-of-way to the defendant, who hit and killed the plaintiff. *Id.* The plaintiff's representative alleged that the defendant was negligent because he was speeding at the time of the accident. *Id.* We determined that the forfeiture instruction was not error because it merely explained to the jury how the plaintiff could be negligent as a matter of law even though the defendant was speeding. *Id.* We stated that, due to the court finding the plaintiff negligent as a matter of law, "at worst, the forfeiture instruction was unnecessary, but informative." *Id.* at 90, 571 N.W.2d at 99.

In contrast, here, neither Perea's nor Gomez' negligence had been determined as a matter of law by the district court. As neither *Smith, supra*, nor *Suiter, supra*, governs the issue in this case, we look instead to the language of the instructions actually given.

Instruction No. 13 addresses both the issues of negligent driving and yielding the right-of-way at an intersection, unlike the pattern jury instructions which separate the elements of negligence and right-of-way into two instructions. The first part of jury instruction No. 13 states the law as it relates to negligent driving, including that drivers are required "to keep their vehicles under such control as a reasonably careful driver would have in the same situation." The final paragraph goes on to state the law as it relates to a driver stopped at an intersection. The last sentence states that such a driver "must yield the right-of-way to a vehicle in cross traffic if the vehicle is close enough and traveling at such a speed, regardless the rate, that it is not safe for him to proceed into the intersection." This sentence correctly states that a person does not forfeit his or her right-of-way by speeding. See *Smith, supra*.

Furthermore, when taken as a whole, the jury instructions correctly state the law. Jury instruction No. 11 correctly provides that "[n]o person shall drive at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." Similarly, instruction No. 12 properly states that "[d]rivers required to stop must yield the right-of-way to cross traffic that is so close to the intersection and traveling at such a speed that it is not safe for them to proceed into the intersection."

After reading these instructions, the jury would understand that the phrase "regardless the rate" in instruction No. 13 accurately reflects what the jury is to consider in determining Gomez'

- 6 -

negligence, but does not preclude it from considering speed in determining Perea's comparative negligence. Gomez' argument that instruction No. 13 was misleading and confusing is without merit.

The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). Although the Nebraska Supreme Court has recognized that a failure to use the pattern jury instructions does not require automatic reversal, *McClure v. Forsman*, 266 Neb. 90, 662 N.W.2d 566 (2003), we caution trial courts that deviating from the pattern jury instructions creates the potential for confusion, prejudicial error, and additional litigation.

## CONCLUSION

The court did not commit reversible error in instructing the jury. Accordingly, we affirm the entry of judgment in Perea's favor.

AFFIRMED.