MARJORIE KENT, PERSONAL REPRESENTATIVE OF THE ESTATE OF ROY L. KENT, DECEASED, APPELLANT, V. LOUIS L. CROCKER, PERSONAL REPRESENTATIVE OF THE ESTATE OF ROSALIE CROCKER, DECEASED, APPELLEE.

562 N.W.2d 833

Filed May 9, 1997.    No. S-95-657.

Lawrence H. Yost, of Yost, Schafersman, Yost, Lamme, Hillis & Mitchell, P.C., for appellant.

Donald D. Schneider, of Schneider & Hartmann, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

In a wrongful death case arising from a car-pedestrian accident, the jury found that Roy L. Kent and Rosalie Crocker were equally negligent. Marjorie Kent appeals.

## SCOPE OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

When reviewing a jury verdict, an appellate court considers the evidence and resolves evidential conflicts in favor of the successful party. *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274 (1995).

A civil verdict will not be set aside where evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Patterson v. City of Lincoln*, 250 Neb. 382, 550 N.W.2d 650 (1996).

## FACTS

In Fremont, Nebraska, Lincoln Avenue is a paved two-lane street running north and south. Linden Avenue is a paved two-lane street running east and west. Stop signs require the east-west vehicle traffic on Linden Avenue to stop at the intersection of Lincoln Avenue.

On August 22, 1992, at approximately 11 a.m., Rosalie Crocker was driving north on Lincoln Avenue. It was sunny, and visibility was clear. At the same time, Roy Kent was walking east along Linden Avenue near the intersection of Lincoln and Linden Avenues. When Roy Kent reached Lincoln Avenue, he began to cross the street. As he was entering the northbound lane of Lincoln Avenue, Rosalie Crocker's vehicle struck him. Roy Kent died from the injuries caused by the accident.

A police investigation disclosed that Rosalie Crocker's vehicle had left no skid marks. Rosalie Crocker died prior to trial due to causes unrelated to the accident. However, when she was interviewed by a police officer at the scene of the accident, she stated: "I was driving north on Lincoln. The minute I saw him I put on the brake, but I wasn't fast enough. He was right beside me." On the day after the accident, the same officer interviewed Rosalie Crocker at her home. She then stated that "she did not see the gentleman until the last minute."

There were no eyewitnesses to the accident. However, Don Paseka was driving approximately one block behind Rosalie Crocker's vehicle at the time of the accident. Paseka estimated the vehicle's speed to be around 30 m.p.h. Paseka did not see Roy Kent before he was struck by Rosalie Crocker's vehicle. Paseka testified that he saw Rosalie Crocker's brake lights come on after Roy Kent was hit by the vehicle and that the vehicle did not turn, swerve, or take any sort of evasive maneuver to avoid the accident.

The defendant's expert, Ted Sokol, an engineer and professor in the college of engineering and technology at the University of Nebraska, performed an accident reconstruction and analysis of the accident. Sokol opined, with a reasonable degree of engineering certainty, that Roy Kent was not in the crosswalk at the time Rosalie Crocker's vehicle struck him. In Sokol's opinion, Roy Kent was between 4.4 and 8 feet south of the south edge of the crosswalk at the time of the accident.

Sokol further testified that when Roy Kent stepped beyond the west curb line, he was 20 feet from the point of impact and Rosalie Crocker's vehicle was approximately 300 feet south of the point of impact. When Roy Kent was 15 feet from the point of impact, the vehicle was 225 feet south of the point of impact. When Roy Kent was 10 feet from the point of impact, the vehicle was 150 feet south of the point of impact. When Roy Kent was 5 feet from the point of impact, the vehicle was 75 feet south of the point of impact. When Roy Kent was 2 feet from the point of impact, the vehicle was 30 feet south of the point of impact.

The plaintiff's expert, Ralph Ekstrom, a professor emeritus of engineering mechanics at the University of Nebraska, testi-

fied that Roy Kent had a clear view of Rosalie Crocker's vehicle as he crossed Lincoln Avenue and that he should have been able to see the vehicle when it was at least 200 feet south of the intersection. Ekstrom gave the opinion that Roy Kent would have had the time and opportunity to avoid the accident had he noticed the oncoming vehicle at any time before he crossed over the centerline of Lincoln Avenue. Ekstrom concluded that Roy Kent was facing east as he crossed the street and that he did not observe the vehicle prior to impact.

At trial, Rosalie Crocker's husband, Louis L. Crocker, and her treating ophthalmologist, Dr. Gregory Haskins, both testified that her vision was adequate to see Roy Kent on the day of the accident. Louis Crocker testified that Rosalie Crocker appeared to be able to drive adequately when she drove him places in August 1992 and that on the occasions when she drove after the accident, she appeared to be able to see adequately. Louis Crocker stated that it was not until November 1992, when Rosalie was hospitalized with general systemic failure and was near death, that her left eye failed her and that she then stopped driving pursuant to her doctor's instructions.

Haskins examined Rosalie Crocker on August 7, 1992, 15 days before the accident. He noticed that she had decreased vision in her right eye. However, he stated that when he saw her on August 7, he was satisfied that she could qualify to drive. Haskins testified that based on his examination of August 7 and his experience as an ophthalmologist, it was his opinion that on August 7, Rosalie Crocker could probably have seen a pedestrian 100 to 150 feet away. Haskins also opined based on reasonable medical probability that there was a high probability that Rosalie Crocker's vision would not have significantly changed during the 15 days between the August 7 examination and August 22, the date the accident occurred.

Following trial, the jury returned a verdict indicating that Rosalie Crocker's negligence was 50 percent of the cause of the accident and that Roy Kent's negligence was 50 percent of the cause of the accident. Accordingly, the district court entered a defense verdict, and Marjorie Kent timely appealed to the Nebraska Court of Appeals. Subsequently, we removed the appeal to our docket.

## ASSIGNMENTS OF ERROR

In summary, Marjorie Kent argues that the district court erred in failing to properly instruct the jury on her theory of the case because the court rejected her requested jury instructions Nos. 1, 2, 3, and 4.

## ANALYSIS

The fundamental issue on appeal is whether the district court erroneously failed to give Marjorie Kent's requested jury instructions. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996).

### REQUESTED INSTRUCTION NO. 1

Marjorie Kent argues that the district court erred in failing to give her requested jury instruction No. 1, which stated as follows: "An automobile driver who knows or in the exercise of due care should know that because of the failing condition of their eyesight they pose a threat to the safety of themselves and others by operating a motor vehicle must bear responsibility for their own actions."

The district court refused to give this instruction and, instead, gave other instructions that addressed a person's duty of care. Instruction No. 8 given by the court stated: "Negligence is doing something that a reasonably careful person would not do under similar circumstances or failing to do something that a reasonably careful person would do under similar circumstances." In addition, instruction No. 10 stated:

Drivers are negligent if they do something a reasonably careful driver in the same situation would not have done or fail to do something a reasonably careful driver in the same situation would have done.

For example, drivers are negligent if they fail to see or hear those things that would have been seen or heard by a reasonably careful driver in the same situation. They are

also negligent if they fail to keep their vehicles under such control as a reasonably careful driver would have, in the same situation.

Reasonably careful drivers take into consideration such facts as their own speed, the condition of their vehicle, the condition of the road, the presence of fog, the presence of other vehicles, pedestrians, or objects, and any other factors that affect driving conditions.

Drivers must use reasonable care even when they have the right-of-way.

Instruction No. 2 stated that "[t]he Defendant admits that Rosalie Crocker failed to maintain a proper lookout . . . ."

It was Marjorie Kent's theory of the case that Rosalie Crocker was negligent in driving with impaired and failing vision. Marjorie Kent argues that Rosalie Crocker did not take adequate care given her failing eyesight and that, therefore, requested instruction No. 1 was required in order to clarify this duty. Marjorie Kent asserts that the district court's instructions did not inform the jury as to the duty of care that a person with poor eyesight must use and that, therefore, the court's general instructions without clarification may have misled the jury into thinking that the law required only that Rosalie Crocker meet the standard of care that the average reasonably careful person would have taken. Marjorie Kent claims that the court's instructions did not clearly indicate that a person must account for the condition of his or her eyesight when determining what is the proper standard of care.

Whether a disabled person has breached his or her duty is based upon how a reasonably careful person with such a disability would have acted. We recently addressed this issue in *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996). In *Traphagan*, we stated that the following instruction, in relevant part, was a correct statement of the duty that one who has a disabling condition owes to others:

"Negligence is doing something that a reasonably careful person with physical abilities identical to those of the person accused of negligence would not do under similar circumstances, or failing to do something that a reasonably careful person with physical abilities identical to

those of the person accused of negligence would do under similar circumstances."

251 Neb. at 155, 555 N.W.2d at 787.

In order to establish reversible error from the refusal to give a requested instruction, an appellant must first show that the tendered instruction is a correct statement of the law. See *Traphagan v. Mid-America Traffic Marking, supra.* Under the facts in the instant case, the district court could not instruct the jury that Rosalie Crocker's driving with failed vision was the proximate cause of the accident. There was no evidence to establish that she was negligent as a matter of law because she drove with her quality of vision. Evidence was presented at trial to the effect that Rosalie Crocker's vision was adequate for her to drive on the date of the accident and that she could see a pedestrian. Requested instruction No. 1 did not correctly state the law. Therefore, the court did not err in refusing to give it.

## REQUESTED INSTRUCTION NO. 2

Marjorie Kent argues that the district court erred by not giving requested instruction No. 2, which stated:

The fact of a valid operator's license does not relieve an automobile driver from responsibility for their failure to exercise due care for their own safety and the safety of others by refraining from driving an automobile when they know or should know they are incapable of doing so in a reasonably safe manner.

In effect, this instruction states that Rosalie Crocker should not have driven her car. We find that the district court did not err in refusing to give requested instruction No. 2.

## REQUESTED INSTRUCTION NO. 3

Marjorie Kent asserts that the district court should have given requested instruction No. 3, which stated: "Nebraska law provides that every driver keep a proper lookout and exercise due care to avoid colliding with any pedestrian upon any roadway, give an audible signal when necessary and exercise proper precaution upon observing any child or obviously confused or incapacitated person upon a roadway."

The substance of this instruction was included in two instructions given by the court—instructions Nos. 10 and 11. Instruc-

tion No. 10 stated in part: "[D]rivers are negligent if they fail to see or hear those things that would have been seen or heard by a reasonably careful driver in the same situation." This adequately instructed the jury as to the legal requirement of drivers to maintain a proper lookout. See, *Mitchell v. Kesting*, 221 Neb. 506, 378 N.W.2d 188 (1985); *Wyatt v. Burlington Northern, Inc.*, 209 Neb. 212, 306 N.W.2d 902 (1981).

Instruction No. 11 stated in pertinent part: "Nebraska statutes provide that, notwithstanding any other provisions of Nebraska law, all drivers shall avoid negligently hitting any pedestrian upon any street, shall give an audible signal when necessary, and shall exercise proper precaution upon observing any child or obviously confused or incapacitated person upon a street." This instruction addressed all portions of the law related to pedestrian right-of-way and the requirement that a driver give a signal to a pedestrian.

It is not error for a court to refuse to give a requested instruction if the substance of the requested instruction is contained in those instructions actually given. *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997). All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Heye Farms, Inc. v. State*, 251 Neb. 639, 558 N.W.2d 306 (1997). Instructions Nos. 10 and 11, when read together, adequately instructed the jury on the issues contained in the requested instruction, and therefore, it was not error for the district court to refuse to give requested instruction No. 3.

### REQUESTED INSTRUCTION NO. 4

Marjorie Kent argues that it was error for the district court to refuse to give requested instruction No. 4, which stated:

> If, from the evidence, you find that Rosalie Crocker knew or should have known that because of the condition of her eyesight, her operation of an automobile posed a threat to the safety of herself and others and that at the time of this accident, she failed to see Roy Kent because of the condition of her eyesight, then from the preceding

three instructions she failed to exercise that degree of due care owed a pedestrian and your finding will be for the plaintiff.

This requested instruction does not correctly state the law because it ignores the element of causation in a negligence action. The jury was not required to find for Marjorie Kent, as the requested instruction requires. Rather, if the jury found that Rosalie Crocker was negligent, the jury was required to compare her negligence to the negligence of Roy Kent.

In cases where the plaintiff's negligence is equal to or greater than the negligence of the defendant, the plaintiff is barred from recovery. See Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995). Therefore, even if the jury found that Rosalie Crocker was negligent, the jury was not required to return a verdict for Marjorie Kent. This requested instruction was not a correct statement of the law, and therefore, it was not error for the district court to refuse to give it.

## CONCLUSION

The district court properly instructed the jury on the issues of negligence raised by the evidence. Roy Kent walked directly in front of an oncoming vehicle driven by Rosalie Crocker. Apparently, he never saw the oncoming vehicle, even though he had an opportunity to do so. The evidence presented at trial established that Rosalie Crocker's vision was adequate on the day of the accident to see a pedestrian. Under the facts of this case, there was no basis for instructing the jury that it had to find in favor of Marjorie Kent because Rosalie Crocker knew or should have known that her physically impaired operation of a motor vehicle posed a threat to others.

Finding no merit in any of Marjorie Kent's assignments of error, we affirm the judgment of the district court.

AFFIRMED.