DIANA J. SUITER, PERSONAL REPRESENTATIVE OF THE ESTATE OF HARRY E. WOLSTENCROFT, DECEASED, APPELLANT, V. DONALD J. EPPERSON, SR., DOING BUSINESS AS CREDIT CAR CENTER, AND ANTHONY D. ROUTT, APPELLEES.

571 N.W.2d 92

Filed October 14, 1997.   No. A-96-379.

John Thomas for appellant.

Stephen G. Olson II and Suzanne M. Shehan, of Hansen, Engles & Locher, P.C., for appellees.

MILLER-LERMAN, Chief Judge, and SIEVERS and MUES, Judges.

SIEVERS, Judge.

## INTRODUCTION

This opinion addresses the appropriateness of certain jury instructions—specifically, whether it was proper to instruct, in a motor vehicle accident case, that speeding does not forfeit right-of-way and whether it was error for the trial court to decide that one party was negligent, when the issue of comparative negligence was to be submitted to the jury. We also address the issue of negligent entrustment in the context of a used car dealer's allowing an unlicensed prospective purchaser to take a vehicle for a test drive, when that driver and vehicle are later involved in an accident.

## FACTUAL BACKGROUND

On June 9, 1993, Anthony D. Routt went to Credit Car Center to buy a white Oldsmobile 98. Upon arriving, Routt asked to test drive the car and was given the keys by Jerry Epperson, an employee of Credit Car Center. The Oldsmobile chosen by Routt had the words "ICE COLD AIR" and several snowflakes painted on the windshield with white shoe polish. Epperson never asked Routt to present a valid driver's license and did not go on the test drive. At trial, Epperson testified that "we just tell them to be careful and cross your [sic] fingers[.]" Routt's license, at the time of the test drive, was under suspension.

Routt was proceeding north on 60th street, traveling approximately 50 m.p.h. in a 35-m.p.h. zone, when he saw a vehicle, driven by Harry E. Wolstencroft, stopped at a stop sign. The Wolstencroft vehicle was positioned to Routt's right, at the intersection of 60th and Pratt. Sixtieth Street is a primary traffic roadway with two lanes for northbound travel and two lanes for southbound travel. Pratt Street is a two-lane roadway running in an east-to-west direction. The intersection was controlled by stop signs for eastbound and westbound traffic on Pratt Street. Routt testified that he was almost to the Pratt and 60th Streets intersection when the Wolstencroft vehicle sped out in front of him. Routt slammed on his brakes but hit the car, killing Wolstencroft's wife, who was a passenger in the vehicle,

instantly. Wolstencroft died a few hours later. After viewing the accident scene, Routt fled.

## PROCEDURAL BACKGROUND

Diana J. Suiter, personal representative of Wolstencroft's estate, and his only child, sued Routt in the district court for Douglas County for negligence and alleged that Routt failed to keep a proper lookout, failed to exercise reasonable control, and operated his vehicle at a speed greater than was reasonable and prudent under the conditions. Suiter also sued Donald J. Epperson, Sr., owner of Credit Car Center, by and through his agent and employee, Jerry Epperson, for negligent entrustment. The jury rendered a verdict in favor of both defendants, specifically finding that Suiter had failed to sustain her burden of proof. Suiter moved for a new trial, which was overruled. Suiter then appealed to this court.

## ASSIGNMENTS OF ERROR

Suiter alleges that the trial court erred (1) in instructing the jury that one does not forfeit his right-of-way by driving at an unlawful speed; (2) in refusing to give a definition of "reasonable lookout" and "reasonable control" in its jury instructions; (3) in instructing the jury that Wolstencroft was negligent; (4) in sustaining a motion in limine to exclude any mention of Wolstencroft's wife; (5) in instructing the jury that Wolstencroft was negligent, but not instructing the jury on the effects of the allocation of Wolstencroft's negligence; and (6) in refusing to instruct the jury on Epperson's negligence in entrusting a vehicle to Routt, whose license was suspended.

## STANDARD OF REVIEW

■ To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997); *Kent v. Crocker*, 252 Neb. 462, 562 N.W.2d 833 (1997).

■ A jury instruction is not reversible error if, taken as a whole, it correctly states the law, is not misleading, and ade-

quately covers the issues. *Scharmann v. Dayton Hudson Corp.*, 247 Neb. 304, 526 N.W.2d 436 (1995).

■ On questions of law, an appellate court has an obligation to reach independent conclusions irrespective of the decision made by the court below. *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997).

A jury verdict will not be disturbed on appeal unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Mahoney v. Nebraska Methodist Hosp.*, 251 Neb. 841, 560 N.W.2d 451 (1997); *Koster v. P & P Enters.*, 248 Neb. 759, 539 N.W.2d 274 (1995).

## ANALYSIS

### JURY INSTRUCTION NO. 10:
### FORFEITURE OF RIGHT-OF-WAY BY SPEED

Suiter first assigns error to the giving of jury instruction No. 10, which reads, "Nebraska statutes provide: No person shall drive at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. However, one does not forfeit his right-of-way by driving at an unlawful speed."

Suiter cites to NJI2d Civ. 7.13, "Duty of Driver Having Right of Way—Stop Sign, Yield Sign, Traffic Light," arguing that because the drafters recommended no separate instruction on this subject, it was error for the court to include the forfeiture language in instruction No. 10. Suiter also argues that this language is inconsistent with instruction No. 9, which states in part, "On the other hand, drivers who do not have stop signs are not relieved of their duty to exercise reasonable care." Suiter further argues that the forfeiture concept is included in another instruction, No. 12, which states, "A person may assume that every other person will use reasonable care and will obey the law until the contrary reasonably appears." Finally, Suiter contends that the nonforfeiture language is just "too harsh." Brief for appellant at 11.

In *Smith v. Kellerman*, 4 Neb. App. 178, 541 N.W.2d 59 (1995), this court addressed what is essentially the reverse of

Suiter's argument. There, Smith argued that the trial court erred by failing to instruct the jury that he did not forfeit his right-of-way by driving at an unlawful speed. The key facts in *Smith* are that Smith was northbound on 19th Street, while Kellerman was eastbound on Dorsey Street. There was a stop sign for eastbound traffic at the intersection of 19th and Dorsey Streets. Kellerman stopped at the stop sign and looked to his right, but his view was obscured by a bush. Kellerman pulled forward and looked again to the right and saw the headlights on Smith's vehicle approximately 2 blocks away. Kellerman looked to the left and then accelerated in a " 'normal' fashion," *id.* at 179, 541 N.W.2d at 62, across the intersection while looking straight ahead and without looking back to the right for the Smith vehicle. Smith applied his brakes, but the two cars collided. There was evidence that Smith was traveling 66 to 77 m.p.h. in a 35-m.p.h. zone immediately before applying his brakes.

In *Smith*, this court restated a well-established tenet of Nebraska motor vehicle law that " '[o]ne does not forfeit his right-of-way by driving at an unlawful speed.' " *Id.* at 189, 541 N.W.2d at 67 (quoting *Burrows v. Jacobsen*, 209 Neb. 778, 311 N.W.2d 880 (1981)). In addressing the issue of the trial court's failure to instruct that Smith had not forfeited his right-of-way by speeding, we turned to the actual instructions given. Instruction No. 9 in *Smith*, modeled on NJI2d Civ. 7.04, stated: " 'Drivers required to stop must yield the right-of-way to cross traffic that is so close to the intersection and traveling at such a speed that it is not safe for them to proceed into the intersection[.]' " (Emphasis omitted.) 4 Neb. App. at 190-91, 541 N.W.2d at 68. We relied upon a doctrine promulgated by the Nebraska Supreme Court in *Jones v. Foutch*, 203 Neb. 246, 278 N.W.2d 572 (1979), that the Nebraska Jury Instructions should be used when applicable and practical, but when it is necessary to draft special definitional instructions, the trial court should, whenever possible, place such instructions in an affirmative rather than a negative posture. Consequently, we concluded that the trial court "need not and should not instruct on conduct which does not forfeit right-of-way." *Smith*, 4 Neb. App. at 191, 541 N.W.2d at 68. At the conclusion of *Smith*, we held that "[t]he nonforfeiture of right-of-way doctrine is contained within

NJI2d Civ. 7.04 which was given to the jury. A separate negative instruction telling the jury that certain conduct does not constitute a forfeiture *is not required.*" (Emphasis supplied.) 4 Neb. App. at 191, 541 N.W.2d at 69.

*Smith*, which at first blush appears to be on point with this case, is different in one important aspect. In *Smith*, the assigned error was the failure to give an instruction, whereas in the case at hand, the error assigned involves an instruction which was given, but allegedly given erroneously. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show three things: (1) The tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *State v. Kinser*, 252 Neb. 600, 567 N.W.2d 287 (1997); *Kent v. Crocker*, 252 Neb. 462, 562 N.W.2d 833 (1997). On the other hand, where an instruction is given, it is not reversible error if, taken as a whole, the instruction correctly states the law, is not misleading, and adequately covers the issues. *Scharmann v. Dayton Hudson Corp.*, 247 Neb. 304, 526 N.W.2d 436 (1995). In short, a slightly different question is presented when the claim is that an instruction should have been given than when the claim is that an instruction should not have been given.

In *Smith v. Kellerman*, 4 Neb. App. 178, 541 N.W.2d 59 (1995), the separate instruction was not warranted by the evidence, since the rule that speeding does not forfeit one's right-of-way was embodied in instruction No. 9. Thus, Smith was not prejudiced by the failure to give such an instruction. We observed in *Smith* that we knew of no case holding affirmatively that such an instruction must be given—which is a different proposition from whether a trial court commits reversible error by giving such an instruction. In resolving the latter question, we remain mindful that, as we have held in *Smith*, the law in Nebraska is that speeding does not forfeit right-of-way. Here, we are governed by a different rule of law, because the instruction was given.

Focusing on the standard applicable when an instruction is actually given, it is clear from our discussion and holding in

*Smith* that the language of instruction No. 10 in the instant case that "one does not forfeit his right-of-way by driving at an unlawful speed" is a correct statement of Nebraska law. We believe the question as to whether this instruction was misleading is answered by examining it in the context of another instruction which was given. Instruction No. 2 states in part, "The court has determined, and you are to accept as proven, that Harry Wolstencroft was negligent in failing to yield the right-of-way to Anthony D. Routt by entering 60th Street." Suiter also assigns error to the trial court for giving this instruction. If it was proper for the trial court to find Wolstencroft negligent as a matter of law, then the forfeiture instruction was not error, since it merely explained to the jury how Wolstencroft could be negligent even though Routt was speeding. Thus, at worst, the forfeiture instruction was unnecessary, but informative. However, inherent in this conclusion is the conclusion that the trial court properly found Wolstencroft negligent as a matter of law. Therefore, we turn to that question.

### INSTRUCTION NO. 2: FINDING THAT WOLSTENCROFT WAS NEGLIGENT AS MATTER OF LAW

Suiter argues that the court erred in instructing the jury: "The Court has determined, and you are to accept as proven, that Harry Wolstencroft was negligent in failing to yield the right-of-way to Anthony D. Routt by entering 60th Street." A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Blose v. Mactier*, 252 Neb. 333, 562 N.W.2d 363 (1997).

The party against whom a verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law. *Hoover v. Burlington Northern RR. Co.*, 251 Neb. 689, 559 N.W.2d 729 (1997); *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996).

The trial court cited four cases as a basis for finding Wolstencroft negligent for failure to yield, two of which we find

helpful in our disposition of this issue. *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986), involved a car accident similar to the one at hand. Steven Doornbos was proceeding west on U.S. Highway 26, and as he crested an incline, he saw Kelly Schmall's car stopped behind a stop sign on a county road on the north side of the intersection. When Doornbos was 400 feet from the intersection and moving at about 50 m.p.h, Schmall's car proceeded into the intersection in front of him. Doornbos applied his brakes, but as the car continued to move across the westbound lane, he released his brakes and swerved to his left to avoid a collision, but this was unsuccessful. Schmall testified that a glare off a road sign had made it difficult to see anything. There was no significant conflict in the two drivers' versions of the accident. The Supreme Court, in reiterating the rules applicable to cases involving violation of the right-of-way of a driver on a favored highway, said:

> "A driver of a motor vehicle about to enter a street or highway protected by stop signs is required to come to a full stop as near the right-of-way line as possible before driving onto such street or highway. After having stopped, such driver shall yield the right-of-way to any vehicle which is approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves his vehicle into or across such intersection. . . .

> "A person traveling on a favored street protected by stop signs of which he has knowledge may properly assume, until he has notice to the contrary, that motorists about to enter from a nonfavored street will observe the foregoing rules."

Id. at 84, 396 N.W.2d at 107-08 (quoting *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978)).

The court in *Chlopek* concluded that the trial court had been correct in concluding that Doornbos' truck was at such a distance as to constitute a hazard when Schmall pulled out and that her negligence in doing so was the sole proximate cause of the accident. Thus, the directed verdict was proper.

In *Kasper v. Carlson*, 232 Neb. 170, 440 N.W.2d 195 (1989), the Supreme Court once again directed a verdict of negligence based on a set of facts similar to those in *Chlopek* and those in

the instant case. Kasper and a friend were traveling south on West River Road, a two-lane highway that runs north and south. Carlson was proceeding east on a gravel county road which intersected West River Road. Carlson testified that he knew a stop sign existed, and he stopped, looking both to his left (north) and right (south). After stopping at the stop sign, Carlson proceeded to the pavement of West River Road and looked left when his truck was halfway through the intersection. He did not see Kasper's truck until seconds before the collision. Kasper was killed in the accident.

Kasper's father, suing for the wrongful death of his son, assigned error to the district court for failing to direct a verdict of negligence against Carlson. Carlson argued that because the issue of the excessive speed of the decedent's vehicle was controverted, the determination as to whether or not he (Carlson) was negligent was properly submitted to the jury. The Supreme Court found that a directed verdict would have been proper under the facts. The court, citing *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986), once again set forth the fundamental precept: "It is well established in this jurisdiction that a motorist is required to yield the right-of-way to a vehicle traveling on a highway protected by stop signs if the vehicle is close enough to the intersection to pose an *immediate hazard.*" (Emphasis supplied.) *Kasper*, 232 Neb. at 173, 440 N.W.2d at 197.

After detailing the above applicable law, the Supreme Court returned to the facts. In his own testimony, Carlson stated that he stopped and looked both directions approximately 55 feet from the pavement of West River Road. After stopping at the stop sign, he then drove to the pavement and never looked to the north again before driving onto the highway. There was also testimony from more than one witness that Carlson admitted immediately following the accident that he could not stop and that his foot slipped off the brake and he went out into the intersection. The court concluded that based on the above evidence, Kasper was entitled to an instruction that Carlson was negligent as a matter of law.

Returning to the instant case, whether one fails to look, or looks and sees an approaching vehicle but misjudges its

speed and distance, the question of negligence is usually for the jury, except in those cases where the evidence that the approaching vehicle was within the limit of danger is so conclusive that reasonable minds could not differ thereupon. *Smith v. Kellerman*, 4 Neb. App. 178, 541 N.W.2d 59 (1995). See, also, *Getzschman v. Yard Co.*, 229 Neb. 231, 426 N.W.2d 499 (1988). Moreover, a driver who fails to see another motorist who is favored over him is guilty of negligence as a matter of law when the motorist's vehicle is indisputably located in a favored position. Before a verdict can properly be directed in such a case, the oncoming vehicle must be definitively located in the favored position, that is, within the radius which denotes the limit of danger. *Smith, supra.* A vehicle is located in a favored position when it is within that radius which denotes the limit of danger, a definition which focuses on the vehicle's geographical proximity to the collision point and the vehicle's favored status under the applicable rules of the road. *Floyd v. Worobec*, 248 Neb. 605, 537 N.W.2d 512 (1995). Thus, in the instant case, the question becomes whether Routt's vehicle was so undisputedly located in a favored position that Wolstencroft was negligent as a matter of law. This question turns on Routt's geographical proximity to the intersection because, as the driver of the vehicle on the protected roadway, Routt is favored under the rules of the road. In addressing the issue of geographical proximity, we view the evidence most favorably to Suiter, as we must when determining whether a verdict should be directed.

In *Smith, supra,* the evidence was that Smith was proceeding at 77 m.p.h. when he applied the brakes, meaning that he was covering 115 feet per second, and he left 142 feet of preimpact skid marks. There was also evidence of perception and reaction time totaling 1½ seconds, meaning that at 77 m.p.h., Smith would have been 173 feet south of where his skid marks began at the instant he was first motivated to apply the brakes. This put Smith at least 315 feet south of the intersection when he perceived Kellerman entering the intersection. However, we also determined that Smith could have been as much as 430 feet south of the intersection when first observed by Kellerman because of the evidence that Kellerman had seen Smith and then shifted his gaze away before starting across the intersection.

This fact would add additional time, and thereby additional distance, to the calculation. Consequently, we held that it could not be said as a matter of law that Smith was undisputedly located in the favored position.

In comparison, the evidence in the instant case is undisputed that Routt was traveling a minimum of 50.3 and no faster than 57 m.p.h. when he first perceived and reacted to Wolstencroft's vehicle. The accident reconstructionist, called by Suiter, testified that Routt was approximately 190 feet from the point of impact when he perceived the danger posed by Wolstencroft's pulling out into the intersection. The fact that Routt had only slowed to 32.09 m.p.h., according to Suiter's accident reconstructionist, upon impact, after full application of his brakes, as well as the fact that the Wolstencroft vehicle pulled out into the intersection with a car just 190 feet away, leads us to conclude that reasonable minds could not differ about whether Routt's vehicle was in a favored position. Routt was so close when Wolstencroft entered the intersection that the only reasonable conclusion is that Routt was in a favored position. Having determined this, we find that the trial court properly found Wolstencroft negligent as a matter of law. Furthermore, because this finding was proper, we find the instruction that "one does not forfeit his right-of-way by driving at an unlawful speed" was not error because all it did was explain to the jury why Wolstencroft could be negligent even though Routt was undisputedly speeding. This is not to hold that it was necessary to so instruct, but, rather, that there was no reversible error in the jury's being told this facet of Nebraska's automobile negligence law.

### Failure to Instruct on "Reasonable Lookout" and "Reasonable Control"

Suiter assigns error to the district court for refusing to give a definition of "reasonable lookout" and "reasonable control." Suiter argues that both she and the defendants requested such an instruction, but that the court failed to comply, instructing only that "Suiter . . . claims that the Defendant . . . was negligent in one or more of the following ways: 1. In failing to keep a proper lookout; 2. In failing to exercise reasonable control[.]" Instruction No. 2.

We find that there was no error in failing to instruct on the meaning of these terms because an expression of common usage requires no definition in instructions to a jury. See *Clark Bilt, Inc. v. Wells Dairy Co.*, 200 Neb. 20, 261 N.W.2d 772 (1978).

The terms "lookout" and "control" are ordinary terms well within the understanding, common sense, and usage of the average juror. It is not error to refuse to give an instruction defining such terms. Compare *Danielsen v. Eickhoff*, 159 Neb. 374, 66 N.W.2d 913 (1954) (holding that "proximate cause" is legal concept with particular meaning in law and is not in category of words or phrases commonly known and understood by lay public; thus, it was error not to give instruction defining it). Moreover, at the core of automobile negligence litigation is the notion that typically the common sense and collective wisdom of the jury determine what is reasonable lookout or reasonable control in a particular factual setting. Having the trial court try to define such terms runs counter to that basic principle. This assignment of error is without merit.

### MOTION IN LIMINE AS TO PRESENCE OF WOLSTENCROFT'S WIFE

On the morning of trial, counsel for both Routt and Epperson orally moved to exclude any evidence that Wolstencroft's wife, Lillian, was his passenger at the time of the accident, that she was also killed in the accident, and that Routt fled the scene after seeing her. The motion was based on the fact that Lillian's estate had filed a separate action for damages, which was settled prior to the trial, and that any evidence concerning Lillian was irrelevant to the issue of Wolstencroft's negligence, as well as highly prejudicial. The trial court sustained this motion and prohibited any reference to Lillian at all during the trial. Suiter assigns error to the court for sustaining the motion, arguing that it forced witnesses to testify about Wolstencroft's life and the accident as if Lillian did not exist, making their testimony awkward and conveying to the jury that they were not credible witnesses.

The admissibility of evidence is reviewed for an abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *State v.*

*Allen*, 252 Neb. 187, 560 N.W.2d 829 (1997). The question here obviously is one of probative value versus prejudicial effect, under Neb. Rev. Stat. § 27-403 (Reissue 1995), which involves the exercise of discretion. See *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). The record reveals that in the instant case the trial court judge, in sustaining the motion in limine, stated, "It is — there is only one reason to bring this up and that is to aggravate the claim for Harry. And I think that it would just be unduly prejudicial to the defendant to do that." Suiter could easily have introduced Routt's flight from the accident as evidence of guilty knowledge, without mention of Lillian or Routt's observation of Lillian. Lillian's presence as a passenger in the car and Routt's fleeing were not inextricably linked. Rather, it is more likely that Routt fled because he was driving without a license. We conclude that the trial court judge did not abuse his discretion in disallowing testimony of Lillian's death, since it was prejudicial and not in the least probative as to the issues of the negligence of Wolstencroft and the two defendants.

### PROPRIETY OF FINDING ONE PARTY NEGLIGENT AS MATTER OF LAW IN COMPARATIVE NEGLIGENCE CASE

Suiter argues that "[t]he court erred in instructing the jury that Wolstencroft was negligent, but not instructing the jury on the effects of the allocation of Wolstencroft's negligence, because the jury could not properly compare Wolstencroft's breach of his duty with the breaches of duty of Routt and Epperson." Suiter contends that because the jury was not allowed to determine Wolstencroft's negligence for itself, it could not meaningfully compare his negligence to Epperson's and Routt's. Suiter cites no authority for this proposition.

This argument is without merit. The trial court found only that Wolstencroft was negligent as a matter of law. The jury was left to make its own determination as to whether Epperson or Routt was also negligent; whether Wolstencroft's negligence was the sole proximate cause of the accident; and if not, to then compare the negligence of Wolstencroft and one or both defendants. In *Traphagan v. Mid-America Traffic Marking*, 251 Neb. 143, 555 N.W.2d 778 (1996), a case arising under the new comparative negligence statute, Neb. Rev. Stat. § 25-21,185.09

(Reissue 1995), Mid-America had contracted to apply and maintain temporary pavement markings during a construction project. Traphagan was traveling east on U.S. Highway 20 when her car collided with the right rear of a 1-ton truck owned and operated by Mid-America. There was evidence that both parties had been negligent. The trial court found that Traphagan was negligent as a matter of law in running into the stopped truck, which was within her range of vision, but the trial court left the determination of Mid-America's negligence to the jury. The Supreme Court found that the trial court had correctly determined that Traphagan was negligent as a matter of law. The Supreme Court went on to note: "However, from our review of the record we cannot say as a matter of law that Traphagan's negligence equaled or exceeded Mid-America's negligence. The trial court properly submitted the negligence issue to the jury in order to have it compare Traphagan's negligence to the negligence of Mid-America." *Traphagan*, 251 Neb. at 153, 555 N.W.2d at 785.

The jury in the case at hand was instructed as follows:

The Court has determined, and you are to accept as proven, that Harry Wolstencroft was negligent in failing to yield the right-of-way to Anthony D. Routt by entering 60th Street.

In connection with their claim that Harry Wolstencroft was negligent, the burden is on the Defendants to prove by the greater weight of the evidence . . . [t]hat the negligence on the part of Harry Wolstencroft in failing to yield the right-of-way was a proximate cause of his own injury and damage.

Instruction No. 2. The jury was further instructed:

If the plaintiff has met her burden of proof as to Defendant Routt or as to Defendants Routt and Epperson, and either or both Defendants have also met their burdens of proof, then you must compare the negligence of Plaintiff with that of the Defendant or Defendants' negligence, and you do that by completing Verdict Form 4 or 5 (depending upon whether you find that Plaintiff met her burden as to either or both Defendants, and that the applicable Defendant also met his burden of proof).

*Id.* Verdict forms 4 and 5 were not included in the appellate record, but no claim is made that the verdict forms did not correctly embody the applicable law on comparing the negligence of Wolstencroft and the defendants.

Provided first that the jury found negligence on the part of either defendant, and second that the jury did not find Wolstencroft's negligence to be the sole proximate cause of the accident, it is clear that the jury was instructed to make its own determination as to the extent of negligence attributable to Wolstencroft for purposes of comparing it with the negligence of either defendant.

## NEGLIGENT ENTRUSTMENT

Finally, Suiter argues that the trial court erred in refusing to instruct the jury "on Epperson's negligence in entrusting a vehicle to Routt, whose license and privilege to operate a motor vehicle was suspended." The jury was, instead, instructed as follows: "The Plaintiff claims that the Defendant Donald J. Epperson, Sr., d/b/a Credit Car Center, was negligent in entrusting a vehicle to Anthony D. Routt when . . . [t]he car was unsafe for use on public roads with advertising lettering that it had on the vehicle's windshield." Instruction No. 2.

Suiter's proposed instruction would have premised Epperson's negligent entrustment of the vehicle to Routt on the ground that Routt's license and privilege to drive a motor vehicle were suspended, a fact which Epperson did not know or discern. However, the court only instructed on the basis that the negligent entrustment arose by virtue of the advertising on the vehicle's windshield. Thus, the question is presented as to whether one's allowing a driver whose license has been suspended to drive a vehicle under one's control can be negligence which proximately causes or contributes to an accident.

We turn first to *Crandall v. Ladd*, 142 Neb. 736, 743-44, 7 N.W.2d 642, 647 (1943), wherein the court said:

> Defendants urge that the court erred in the failure to properly instruct with regard to the failure of the deceased to have a driver's license. In this contention we think there is no merit.

> The evidence indicated that the deceased had no driver's license. The court instructed that this evidence

was "admitted by the court for your consideration merely for whatever you may consider it worth in determining whether or not Crandall was negligent at the time."

If this was error no reason is observable why it was prejudicial to the defendants. There is no word in any of the testimony from which even an inference of casual [sic] connection between the accident and the failure to have a driver's license could be drawn.

We are not unmindful of the rule that a violation of a statute or ordinance enacted in the interest of public safety is evidence of negligence (*Walker v. Klopp*, 99 Neb. 794, 157 N. W. 962; *Stevens v. Luther*, 105 Neb. 184, 180 N. W. 87), but the rule cannot be made applicable unless there is some causal relation between the violation and an accident.

Probably the most complete discussion of the issues involved in Suiter's negligent entrustment claim is found in *Deck v. Sherlock*, 162 Neb. 86, 90-91, 75 N.W.2d 99, 102 (1956):

It is the contention of the appellant that the evidence shows that Sherlock was negligent in entrusting his automobile to Duffy and Hull under the circumstances shown, and that the trial court erred in directing a verdict in favor of Sherlock. Neither the law of master and servant, nor the law of principal and agent, is applicable to the instant case. Walker v. Klopp, 99 Neb. 794, 157 N. W. 962, L. R. A. 1916E, 1292. The controlling rule is as follows: The law requires that an owner use care in allowing others to assume control over and operate his automobile, and holds him liable if he entrusts it to, and permits it to be operated by, a person whom he knows or should know to be an inexperienced, incompetent, or reckless driver, to be intoxicated or addicted to intoxication, or otherwise incapable of properly operating an automobile without endangering others. Williamson v. Eclipse Motor Lines, Inc., 145 Ohio St. 467, 62 N. E. 2d 339, 168 A. L. R. 1356. A motor vehicle is not an inherently dangerous instrumentality and the owner is not generally liable for its negligent use by another to whom it is entrusted to be used. Liability may arise, however, if the owner permits operation of his

motor vehicle by one whom he knows or should have known to be so incompetent, inexperienced, or reckless as to render the vehicle a dangerous instrumentality when operated by such person. In order to establish such a liability on the part of an owner it must be shown that he had knowledge of the driver's incompetency, inexperience, or recklessness as an operator of a motor vehicle, or that in the exercise of ordinary care he should have known thereof from facts and circumstances with which he was acquainted. Williamson v. Eclipse Motor Lines, Inc., *supra.* See, also, Annotation, 168 A. L. R. 1364.

Generally, an automobile dealer who places one of his cars in the hands of a prospective purchaser, or one acting for the latter, whom he knows, or in the exercise of reasonable care should know, to be incompetent to operate the car safely, is liable for injuries caused by the driver's incompetence, and this is true whether or not the dealer or his representative is present in the car at the time the injury or damage was caused. Annot., 31 A.L.R.2d 1457 (1953). Courts in other states have limited a dealer's liability for negligent entrustment to circumstances where the driver was intoxicated, lacked driving experience, or was unfamiliar with a particular type of car. See *id.* at 1457-61.

There are, then, basically two requirements necessary to impose liability on a dealer for negligent entrustment. First, the dealer must know, or in the exercise of reasonable care should know, the driver to be incompetent. See *Deck, supra.* Here, there is no evidence to show that Epperson knew or should have known that Routt was incompetent to drive—unless we impose a duty on the car dealer to ask for a license and also hold that the absence of a license equates with incompetency. Second, the injuries complained of must be a result of such incompetence. Annot., 31 A.L.R.2d, *supra.* In this case, the jury found the sole proximate cause of the accident to be Wolstencroft's negligence. Here, the "incompetence" complained of is apparently the fact that Routt was an unlicensed driver. Lacking a driver's license does not equal incompetency to drive; it just means that the person cannot lawfully drive.

There is a statute, Neb. Rev. Stat. § 60-491 (Reissue 1993), which provides in relevant part:

> It shall be unlawful for any person:
>
> . . . .
>
> . . . To authorize or knowingly permit a motor vehicle owned by him or her or under his or her control to be driven upon any highway by any person who is not authorized under the act or is in violation of any of the provisions of the act[.]

The act referred to in the statute is the Motor Vehicle Operator's License Act, which, as a general proposition, requires that people have driver's licenses before they drive, and Routt did not. However, the plain language of the statute prohibits only "knowingly" permitting or authorizing one to drive a vehicle who is unlicensed to do so. As is apparent from the testimony of Jerry Epperson, the evidence reveals what might be called a "don't ask" policy, and the suspended driver is pretty unlikely "to tell." Epperson testified that he made no attempt to determine if Routt was licensed to drive before authorizing a test drive of the vehicle. However, we find no Nebraska statutes or case law holding that a car dealer has a duty to ask a prospective test driver for a license. We acknowledge that without the duty to ask, it would be very difficult for a car dealer to ever knowingly violate this statute. Consequently, the submission as a particular of negligence to a jury of the claim that a car dealer allowed a person with a suspended license to drive is rather unlikely. Thus, we hold that absent knowledge that a prospective test driver is unlicensed, it is not negligence for a car dealer to entrust a vehicle to such a driver, unless the dealer knows or should have known that the prospective driver is incompetent to drive. The notion that car dealers should be responsible to ensure that they are entrusting a vehicle to a licensed driver for a test drive seems a rather elementary statement of desirable public policy, but we do not make public policy. In any case, current Nebraska law does not impose a duty upon a car dealer to inquire, absent knowledge or forewarning, whether a prospective test driver possesses a valid driver's license. Thus, because the record is devoid of any knowledge that Epperson knew, or should have known, that Routt was unlicensed, and absent any duty to ask about Routt's status as a driver, it follows that the trial court was correct in not submitting the question of

negligent entrustment due to the lack of a valid driver's license by Routt to the jury.

## CONCLUSION

To conclude, the trial court did not err by instructing the jury that speeding does not forfeit a driver's right-of-way. It was appropriate for the trial court to find Wolstencroft negligent as a matter of law, because Routt was clearly in a favored position when Wolstencroft entered the intersection. Definitions of "reasonable lookout" and "reasonable control" were not needed in the jury instructions, because they are words of common usage. The trial court's exclusion of references to the death of Wolstencroft's wife was not an abuse of discretion. Finally, the court did not err by refusing to instruct on negligent entrustment because of Routt's suspended license. Therefore, the judgment of the district court is affirmed.

AFFIRMED.