PATTI BATES, APPELLANT, V. DESIGN OF THE TIMES, INC., A NEBRASKA CORPORATION, APPELLEE.

610 N.W.2d 41

Filed May 9, 2000.    No. A-99-673.

Steven D. Davidson, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellant.

Michael G. Mullin, of McGrath, North, Mullin & Kratz, P.C., for appellee.

Irwin, Chief Judge, and Sievers and Moore, Judges.

Sievers, Judge.

In this negligence action, Patti Bates alleges she suffered a brain stem stroke because her neck was hyperextended during a hair rinsing procedure at a beauty salon, Design of the Times, Inc. (DOTT). Bates claims that the DOTT employee who rinsed her hair failed to notice and then relieve her discomfort while she was in a reclining position with her head over a sink and that as a result, she suffered an occluded vertebral artery, which later developed into a stroke. The Douglas County District Court sustained DOTT's motion for summary judgment, because Bates' expert medical evidence was insufficient to create an issue of fact regarding causation.

## I. BACKGROUND

On March 11, 1995, Bates went to DOTT to get a permanent in her hair. As part of the procedure, a chemical solution was rinsed out of Bates' hair by a DOTT employee, M'Lissa Golden. Golden directed Bates to lean back in a chair with her head extended, her face up, and her head over a sink. Bates experienced some discomfort while over the sink, and after approximately 1 to 2 minutes, she lifted her head to relieve the discomfort. Golden placed her hand on Bates' forehead and said, " 'You're okay,' " as she pushed Bates' head back over the sink. Bates again felt discomfort, and after 1 or 2 minutes, she again lifted her head from over the sink. When Bates lifted her head a second time, Golden asked, "What are you doing?" Bates told Golden she was lifting her head so that Golden could rinse the nape of her neck, to which Golden responded that she had already rinsed that area. The rinsing procedure lasted from 5 to 8 minutes. When Bates stood up from the chair at the sink, she felt momentary dizziness. Bates testified that she said, " 'Whoooooh,' " because of her dizziness, and that Golden assisted Bates back to a styling chair.

The record also shows that Bates experienced dizziness and nausea during the day, prior to her hair appointment. The

evening after the appointment, Bates felt "very lethargic and more tired" than usual. During lunch the following day, Bates began experiencing a severe headache, pain in her right ear, double vision, and facial drooping. She was taken to the hospital where she was diagnosed with a severe migraine and released. The following morning, Bates was seen by Dr. Ronald Cooper, a neurologist. Cooper admitted Bates to the hospital, where she was eventually diagnosed as having suffered a brain stem stroke.

Cooper testified as a medical expert, and his testimony is relied upon by Bates as evidence of causation. During his deposition, Cooper was asked several times, in various ways, if he had an opinion to a reasonable degree of medical certainty as to whether Bates' stroke was causally related to the rinsing procedure she received at DOTT. Cooper's consistent response was that the cause of the stroke "most likely was related to head and neck positioning" during the rinsing procedure at DOTT. Bates also relies on the expert testimony of Dr. William Shiffermiller. Shiffermiller opined that there was a "likelihood" that the rinsing procedure was at least "partially responsible" for Bates' stroke.

DOTT moved for summary judgment, which the Douglas County District Court sustained. The court found that "the opinions of the doctors examined in the context of their entire testimony are not sufficiently definite and relevant to provide a basis of fact for the fact finder's determination of an issue or question." The court also found there was no evidence that the manner in which Bates' hair was rinsed "was done contrary to the standards of the industry" or that the length of the rinsing procedure was the cause of her injury. Bates timely filed this appeal. Other facts are provided as needed in the analysis below.

## II. ASSIGNMENT OF ERROR

Bates' sole assignment of error is that the district court erred in granting DOTT's motion for summary judgment.

## III. STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from

those facts and that the moving party is entitled to judgment as a matter of law. *Chelberg v. Guitars & Cadillacs*, 253 Neb. 830, 572 N.W.2d 356 (1998); *Farmers Union Co-op Ins. Co. v. Allied Prop. & Cas.*, 253 Neb. 177, 569 N.W.2d 436 (1997).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Chelberg, supra*; *Schendt v. Dewey*, 252 Neb. 979, 568 N.W.2d 210 (1997).

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Chelberg, supra*; *Farmers Union Co-op Ins. Co., supra.*

## IV. ANALYSIS

The district court's order sustaining DOTT's summary judgment motion addresses the issue of causation, finding that the medical experts' testimony was not sufficiently definite to create a factual issue concerning causation. Bates argues that the district court weighed the evidence rather than evaluated the evidence to determine whether a factual issue existed. Cooper stated his opinion on medical causation several times during his deposition, in response to multiple inquiries on both direct and cross-examination. While Cooper did state once that "the positioning of [Bates'] head and neck with medical certainty caused injury to the right vertebral artery that subsequently became occluded," his opinion, considering his testimony in its entirety, is that the "most likely" cause of Bates' stroke was the positioning of her head and neck during the rinsing procedure.

Nebraska law does not require Cooper's expert medical opinion to be couched in the magic words "to a reasonable degree of medical certainty." See *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). Expert medical testimony must be sufficient, when examined in its entirety, to establish the crucial causal link between the plaintiff's injuries and the defendant's negligence. *Id.*, citing *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998), and *Shahan v. Hilker*, 241 Neb. 482, 488 N.W.2d 577 (1992). "Medical expert testimony

regarding causation based upon possibility or speculation is insufficient; it must be stated as being at least 'probable,' in other words, more likely than not." *Doe*, 255 Neb. at 975, 587 N.W.2d at 893. Cooper stated that in his expert opinion, the "most likely" cause of Bates' stroke was the positioning of her head and neck during the rinsing procedure. He also testified that there was a high likelihood that the vertebral artery may have been traumatized by the positioning. Finally, he stated that the positioning of her head "certainly caused injury to the right vertebral artery" and the occlusion of that artery caused her stroke. Viewing Cooper's testimony as a whole, it is legally sufficient evidence of the causation of the stroke. See *Rogers v. Spain*, 388 S.W.2d 518, 521 (Mo. App. 1965) (testimony of physician that plaintiff's pain " 'most likely' " would be permanent was not speculative but was to reasonable degree of medical certainty that injuries would be permanent). Therefore, the trial court erred in concluding that the medical testimony of causation was insufficient.

However, the fact that the trial court erred in finding insufficient evidence of causation does not end our analysis. In order to establish Bates' negligence claim, she must provide evidence of each material element—duty, breach, causation, and damages. See *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994). In addition to finding insufficient evidence of causation, the trial court indicated that evidence of breach was lacking. Having determined that there was sufficient medical evidence of causation to withstand the motion for summary judgment, we next consider whether the record contains sufficient evidence to create a genuine issue of material fact for the jury's determination on the elements of duty and breach. We note that the record contains sufficient evidence of damages obviating any discussion of that element.

### 1. Evidence of Duty

The law requires a person "to use due care so as not to negligently injure another person." *Merrick*, 246 Neb. at 661, 522 N.W.2d at 406. DOTT argues that there is no duty in the present case because the risk of stroke during the rinsing procedure was unforeseeable. "[F]oreseeability, in the duty context, is

a legal question for the court." *Knoll v. Board of Regents*, 258 Neb. 1, 8, 601 N.W.2d 757, 763 (1999). DOTT argues that the relatively new phenomenon referred to as "beauty parlor stroke syndrome" could not have been foreseen by DOTT in 1995 when Bates was allegedly injured. However, the record shows that Michele Hovorka, the owner of DOTT, was actually aware of beauty parlor stroke syndrome before March 1995. Hovorka stated that a client had brought her an article from a medical journal discussing the risk of strokes associated with beauty parlor rinsing procedures. She also stated that she felt the article was something that she needed to bring to the attention of her employees, so she held a meeting where the issue was discussed. Furthermore, she informed her employees that if a client "complained about it, they were to be rinsed forward." While Golden stated that she personally had no knowledge of potential harm, Hovorka's actual knowledge of beauty parlor stroke syndrome is imputed to DOTT. See *Federal Sav. and Loan Ins. Corp. v. Morque*, 372 N.W.2d 872 (N.D. 1985) (knowledge of board of directors, officers, or agents of corporation is imputed to corporation); *Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697 (Iowa 1982) (generally, knowledge or notice of officer-director of corporation is imputed to corporate entity even if it is never actually disclosed to corporation). Because Hovorka had actual knowledge that there were reports of a risk of stroke from rinsing procedures and she acted on that knowledge by instructing DOTT employees about the risk before Bates was rinsed by Golden, DOTT had a duty to ensure its employees conducted the rinsing procedure in a manner so as to avoid negligently injuring a client.

## 2. WHETHER THERE WAS A BREACH

Bates offered the testimony of cosmetology expert Martin McGaig as evidence of the breach of duty. McGaig offered four opinions which criticized DOTT's activities relating to the rinsing procedure. We analyze each criticism separately.

### (a) Licensing

McGaig opined that Hovorka failed to act in accord with what would be expected of a reasonably prudent cosmetologist by failing to confirm that Golden was appropriately licensed by

the State of Nebraska before permitting her to render cosmetology services to Bates. However, McGaig was also unaware of anything other than failing to have a license which would render Golden incompetent or unqualified to perform the rinsing procedure. Failure to have a cosmetologist's license is not, by itself, negligence. See, *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992); *Suiter v. Epperson*, 6 Neb. App. 83, 571 N.W.2d 92 (1997) (lack of driver's license does not equal incompetency to drive). The only evidence concerning Golden's license is that she did not have one at the time she rinsed Bates' hair because of an administrative issue. There was, however, undisputed evidence that she was fully trained and qualified, and there was no evidence that she did not know how a reasonable person in her position would rinse hair. Therefore, the fact that Golden was unlicensed could not be a breach of duty which proximately caused the injury involved herein.

### (b) Indications of Discomfort

McGaig opined that Golden failed to respond as would be expected of a reasonably prudent cosmetologist to Bates' indications of discomfort during the rinsing procedure. However, he stated that the only indications of discomfort upon which he based his opinion was the fact that Bates moved her head twice. While Bates testified that she felt discomfort during the rinsing procedure, she never verbally told Golden or Hovorka that she was in pain or having discomfort. Bates agrees that the only indication from which Golden could know that she was feeling discomfort during the procedure was that she moved her head twice. Bates argues that her conduct of moving her head indicated her discomfort sufficiently to put Golden on notice that she may be in a dangerous position, despite Bates' admitted failure to verbalize any problems to Golden. Without verbalization of discomfort, we conclude that no reasonable person in Golden's position could be expected to know that Bates was in such discomfort that she was being injured, or even that the rinsing procedure needed to be stopped. Any other holding would require Golden to be a mindreader. Negligence is defined as a failure to do what reasonable and prudent persons would ordinarily have done, or not done, under the circumstances. *Farmer*

*v. S.M.S. Trucking Co.*, 180 Neb. 779, 145 N.W.2d 922 (1966). Thus, the question becomes, even giving Bates the favorable inferences from the evidence, whether there is any evidence that Golden acted unreasonably.

There is no evidence that Golden improperly placed or positioned Bates' head over the sink. She followed the standard procedure for rinsing, which was to place the client in a chair, leaning back, with the client's head extended over the sink, face up. McGaig agreed that Golden did not deviate from the proper procedure when rinsing Bates' hair. Furthermore, he stated that many customers complain of some discomfort during the procedure, but Bates did not even do that. The only allegation of negligence against Golden is failing to reposition Bates' head after Bates voluntarily moved her head. The evidence shows only that Bates lifted her head twice. When Bates lifted her head the second time, she verbally indicated that she did so, not because of discomfort, but so that Golden could rinse the nape of her neck. How could any reasonable person conclude from this action and statement that the customer was suffering discomfort such that the law would impose a duty to reposition her? A reasonable person would believe that Bates, particularly after Golden told Bates that she had already rinsed the nape of Bates' neck, made no complaint of discomfort. And Bates then voluntarily repositioned her head over the sink, without any further indication of discomfort. The only reasonable conclusion and inference for Golden was that Bates was not experiencing any discomfort. In conclusion, there is no evidence that Golden was negligent when she failed to reposition Bates' head, given that Bates had done so twice herself without any complaint of pain and Bates' only statement was that she was moving her head so that the nape of her neck could be rinsed.

### (c) Rinsing Time

Next, McGaig opined that it was inappropriate to rinse Bates' hair for more than 5 minutes and that 3 minutes of rinsing would have been adequate. But McGaig agreed that the product used on Bates' hair suggested rinsing for a full 5 minutes. Moreover, the textbook relied upon and used by McGaig at his beauty college recommends that rinsing be done for 3 to 5 minutes, at a

minimum. Finally, McGaig knew of no medical problems associated with "over rinsing." While we view the evidence most favorably to Bates, we bear in mind that this is a hair rinse—not rocket science or microsurgery where time and space and distance are crucial. But, even accepting the notion that 8 minutes of rinsing was negligence, there is no evidence whatsoever that the extra 3 minutes of rinsing was in any way causally related to Bates' stroke. Cooper's testimony is that the way Bates' head was positioned during the rinsing procedure was the most likely cause of the injury to her vertebral artery, not that the cause was that she was positioned too long over the sink. And, Cooper offered no testimony as to what effect, if any, an extra 3 minutes of rinsing had upon Bates' injury. Without some evidence that the allegedly negligent additional 3 minutes was causally related to the injury, the evidence of extra rinsing time does not provide any evidence of a breach of duty which is causally related to the injury.

### (d) Independent Time

Finally, McGaig opined that Golden was allowed independent time with Bates contrary to DOTT's policy. Hovorka stated that "independent time" is time when an employee is "actually doing cutting services on clients that they're getting paid for." There was no evidence of "cutting" here. Hovorka stated that when an employee such as Golden is shampooing or rinsing a client, they are not engaged in independent time because they are not "producing revenue on their own, doing a client from start to finish." There is no evidence that Hovorka was required to be at Golden's side throughout the rinsing procedure or that had she done so, the customer would have been treated differently.

### V. CONCLUSION

■ We find that there is no evidence whatsoever of a breach of duty which had a causal connection with Bates' stroke and that thus, there is no genuine issue of material fact for trial. We affirm the decision below, despite the fact that the trial court erroneously found insufficient evidence of medical causation. But the trial court did find insufficient evidence of breach of duty which proximately caused the stroke. That conclusion is correct and requires that summary judgment for DOTT be sus-

tained. Moreover, to the extent that the trial court's decision was incorrect about the medical evidence, we remember that " '[a] wrong reason for a correct conclusion of the trial court is generally immaterial on appeal.' " *Employers Mutual Casualty Co. v. Brazda*, 152 Neb. 633, 637, 42 N.W.2d 195, 197 (1950).

AFFIRMED.

IRWIN, Chief Judge, dissenting.

I agree with the majority's opinion finding that there was a duty on the part of DOTT because Hovorka had actual knowledge that there was a risk of stroke from rinsing procedures and that she responded to that knowledge by instructing DOTT employees about the risk before Golden rinsed Bates' hair. DOTT had a legally recognized duty to ensure its employees performed the rinsing procedure in a manner that would avoid negligently injuring a client. I further agree that Cooper's expert testimony was sufficient to establish that the positioning of Bates' head caused injury to the right vertebral artery and that the occlusion of that artery caused her stroke.

I disagree with the majority's conclusion that a reasonably prudent cosmetologist, *as a matter of law*, should not be expected to conclude that Bates' actions indicated discomfort. It must be kept in mind that it was DOTT, not Bates, who had the superior knowledge that positioning a person's head in a laid back posture over the sink could lead to a stroke. It was Golden who was instructed by her employer of the danger of the rinsing process and that if a client "complained about it, they were to be rinsed forward."

It must also be remembered that when Bates' head had been over the sink for 1 to 2 minutes, she lifted her head, and that Golden pushed Bates' head back over the sink and told her, "You're okay." Golden made no inquiry of Bates at that time. Subsequently, when Bates lifted her head a second time, she was met with the remark, "What are you doing?" being leveled at her by Golden. While understanding that the second time she lifted her head from over the sink she stated she was doing so in order to allow Golden to rinse the nape of her neck, this does not eliminate all probative value of the first movement of the head, or the second movement from over the sink, or their combined probative value.

It does not seem out of the realm of reasonableness that Bates, although experiencing discomfort, decided to endure this uncomfortable process, rather than complain to Golden who had already told her that she was "okay" or to have her head pushed over the sink once again. After all, it was DOTT, not Bates, who knew that discomfort while positioned over the sink in this fashion could be indicative of vertebral occlusion and the onset of a stroke.

It has been repeatedly stated that summary judgment is an extreme remedy. It should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a genuine issue of material fact must be resolved against the moving party. *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985).

On a motion for summary judgment, the question is whether there is any genuine issue of material fact and not how that issue should be decided. In considering a motion for summary judgment, the court should view the evidence in the light most favorable to the party against whom it is directed. *Piper v. Hill*, 185 Neb. 568, 177 N.W.2d 509 (1970).

There exists a genuine issue of material fact as to whether Bates' action would put a reasonable cosmetologist on notice that a customer was experiencing pain or that appropriate and reasonable inquiry was called for given these facts.